THE FAIR EMPLOYMENT PRACTICES COMMISSION, Petitioner-Appellant, *v.* THOMAS TENEROVITZ *et al.*, Defendants-Appellees.

(No. 60015;

First District (1st Division)—January 6, 1975.

William J. Scott, Attorney General, of Chicago (Robert G. Epsteen, Assistant Attorney General, of counsel), for appellant.

Ruff and Grotefeld, Ltd., of Chicago (Stephen L. Ruff, Jr., and John T. Mehigan, of counsel), for appellees.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This is an action by the Fair Employment Practices Commission of Illinois (hereinafter the Commission) to have the circuit court of Cook County order the defendants to obey certain subpoenas issued by the Commission. Three of the defendants are the agents of several hospitals which are associated with the fourth defendant, Missionary Sisters of the Sacred Heart. The subpoenas were issued by the Commission in connection with certain investigations into charges of unfair employment practices in violation of section 3(a) of the Fair Employment Practices Act (Ill. Rev. Stat. 1971, ch. 48, par. 853(a)) which allegedly took place at the hospitals with which the defendants were associated. The court dismissed the Commission's petition to have the subpoenas enforced on the ground that the defendants were exempt from the Act's provisions due to their religious affiliation as provided in section 2(d) of the Act. (Ill. Rev. Stat. 1971, ch. 48, par. 852(d).) The Commission's later motion to vacate this order was also denied by the court. The Commission ap-

peals from these two orders, contending that the defendants are not exempt under the Act.

Certain charges were filed with the Commission in 1971 and 1972 concerning alleged unfair employment practices that took place at Columbus and St. Francis Xavier Cabrini Hospitals. The charges alleged that these hospitals had discriminated either on the basis of race or national origin and ancestry in the advancement, reinstatement, hiring or termination of the complainants. The Commission then issued subpoenas to the defendants requiring their appearance and their production of personnel records concerning the charges. The defendants did not comply with the subpoenas, contending that they were exempt from the provisions of the Act. The Commission, therefore, petitioned the circuit court of Cook County in accordance with section 9(d) of the Fair Employment Practices Act (Ill. Rev. Stat. 1971, ch. 48, par. 859(d)) for an order requiring the defendants to comply with the subpoenas. The defendants then made a motion to dismiss the Commission's petition on the ground that they were exempt under section 2(d) of the Act. (Ill. Rev. Stat. 1971, ch. 48, par. 852(d)) because the two hospitals were owned and operated by a religious order of nuns of the Roman Catholic Church.

Section 3(a) of the Fair Employment Practices Act (Ill. Rev. Stat. 1971, ch. 48, par. 853(a)) provides that it is an unfair employment practice:

> "For any employer, because of the race, color, religion, sex, national origin or ancestry of an individual to refuse to hire, to segregate, or otherwise to discriminate against such individual with respect to hire, selection and training for apprenticeship in any trade or craft, tenure, terms or conditions of employment."

Section 2(d) of the Act (Ill. Rev. Stat. 1971, ch. 48, par. 852(d)) then states that:

> "The term 'employer' does not include any not for profit corporation or association organized for fraternal or religious purposes, nor any school, educational or charitable institution owned and conducted by, or affiliated with, a church or religious institution, nor any exclusively social club, corporation or association that is not organized for profit."

The defendants contend that section 2(d) exempts their hospitals from the provisions of the Act.

Section 2(d) defines three categories of organizations which are not included in the term "employer." They are: (1) "any not for profit corporation or association organized for fraternal or religious purposes,"; (2) "any school, educational or charitable institution owned and con-

ducted by, or affiliated with, a church or religious institution,"; and (3) "any exclusively social club, corporation or association that is not organized for profit." The motions presented and hearings held in the lower court primarily concerned whether the hospitals were within the second category under the designation of a "charitable institution owned and conducted by, or affiliated with, a church or religious institution."

The defendants attached to their motion to dismiss an affidavit which stated that Columbus and St. Francis Xavier Cabrini Hospitals were owned and operated by a corporation known as the Missionary Sisters of the Sacred Heart. The corporation, stated the affidavit, was solely owned by a religious order of nuns of the Roman Catholic Church. The function of this corporation was to operate hospital facilities on a religiously oriented, not-for-profit basis and also to train nurses.

None of these contentions was disputed by the Commission at a hearing held before the court subsequent to the defendants' motion. The Commission's attorney during the hearing agreed that the hospitals were operated on a not-for-profit basis and the Missionary Sisters were affiliated with the Roman Catholic Church. In response to an inquiry into where any excess funds from the hospital operations would go, the defendants' attorney stated that they were plowed back into the hospital operation. Upon this evidence the court granted the defendants' motion to dismiss the Commission's petition. The court found that the defendants were exempt under section 2(d) of the Act.

A month thereafter the Commission filed a motion to vacate the order granting the defendants' motion to dismiss the Commission's petition. The motion alleged that there had been since January 5, 1973, four separate corporations with an interest in the hospitals rather than only one as alleged in the defendants' prior motion to dismiss. The Commission attached to its motion the articles of incorporation for these four corporations. The four corporations were: (1) Columbus-Cuneo-Cabrini Medical Center, Inc.; (2) Missionary Sisters of the Sacred Heart, Inc.; (3) Missionary Sisters of the Sacred Heart—Midwest Province, Inc.; and (4) Columbus-Cuneo-Cabrini Medical Foundation, Inc. The Medical Center was incorporated in 1903, while the other three corporations were all incorporated on January 5, 1973. The Commission's motion contended that because the medical center which now operated the hospitals was a separate corporation from the Missionary Sisters, therefore the hospitals were no longer entitled to an exemption under section 2(d) of the Act.

A letter was sent by the defendants' attorney to the Commission's attorney which explained the relationship of these four corporations. The Commission then attached this letter to a motion for summary judgment later presented to the court. The letter and the articles of incorporation

of the four corporations were the primary focus of discussion at a subsequent hearing held before the court.

Prior to January 5, 1973, there was only one corporation, the Missionary Sisters of the Sacred Heart, which was incorporated in 1903. The articles of incorporation stated that the purpose of this corporation was to establish and maintain hospitals and training schools for nurses all of which is "for charitable purposes and not for pecuniary profit." Nowhere in the proceeding below did the Commission dispute the fact that prior to January 5, 1973, this corporation in fact has operated the hospitals in question on a not-for-profit basis.

On January 5, 1973, an amendment was filed to the articles which changed the corporation's name to Columbus-Cuneo-Cabrini Medical Center. It is agreed by both parties that the Medical Center Corporation has the day-to-day operational control of the defendant hospitals.

Three new corporations were incorporated on January 5, 1973. The first was the Missionary Sisters of the Sacred Heart whose stated purposes were to establish and maintain hospitals and to assist the Medical Center corporation through gifts and loans of money. The Missionary Sisters of the Sacred Heart—Midwest Province was incorporated the same day for identical purposes. The third corporation incorporated that day was the Columbus-Cuneo-Cabrini Medical Foundation which was organized for the purpose of raising funds for the use and benefit of the Medical Center. All the above corporations were to be operated on a not-for-profit basis, and no provisions were made for the issuance of stock.

The Commission attached to the motion for summary judgment the letter written to the Commission's attorney by the defendants' attorney in which the defendants explained the nature of these corporations and answered certain questions put to them by the Commission. The letter states that the Missionary Sisters of the Sacred Heart, an order of nuns of the Roman Catholic Church, formed a corporation in 1903 to carry out their business concerning the hospitals in question. The name of the original corporation was changed to the Columbus-Cuneo-Cabrini Medical Center and the three above-named corporations were formed. The letter states that the Medical Center corporation owns all the hospital property and conducts the day-to-day administration of the hospitals. However, all the members and officers of the Medical Center corporation are members of the religious order of the Missionary Sisters of the Sacred Heart.

At a subsequent hearing, the Commission contended that the letter and the articles of incorporation for the four corporations showed that the defendants did not fall under the Act's exemption provisions. A discussion ensued as to whether the hospitals admitted non-paying patients,

The defendants' attorney stated that the hospitals admitted orphans and also offered to inform the Commission of the number of "free patients" the hospitals had admitted. The hearing brought out very little new evidence not already contained in the letter and the articles of incorporation. Upon the above evidence the court denied the Commission's motion to vacate its prior order dismissing the Commission's petition.

The Commission's first contention on appeal is that the defendants are not an organization which falls within one of the exemptions provided by section 2(d) of the Act. (Ill. Rev. Stat. 1971, ch. 48, par. 852(d).) The second category of organizations listed under section 2(d) includes any "charitable institution owned and conducted by, or affiliated with, a church or religious institution." This category makes two requirements: that the organization be a "charitable institution" and that it be either "owned and conducted by, or affiliated with, a church or religious institution." The Commission contends the hospitals in question meet neither of these two requirements.

■■ The term "charitable institution" has not yet been construed under the Fair Employment Practices Act by any court of this state. However, the term "charitable organizations" used in section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 500.7) which grants tax exemptions to such organizations has been construed a number of times. The cases construing section 19.7 have developed a number of characteristics to look at to decide whether an organization is a charitable organization. The characteristics of a charitable organization include: (1) the absence of stock, shareholders and dividends; (2) the acquisition of funds through donations and charity; (3) the use of those funds for charitable purposes; (4) the dispensing of charity to those who need and apply for it; and (5) the absence of any profits which accrue to private benefit rather than being applied to the charitable purpose. (*Methodist Old Peoples Home v. Korzen*, 39 Ill.2d 149, 233 N.E.2d 537; *American College of Surgeons v. Korzen*, 36 Ill.2d 340, 224 N.E.2d 7). Relieving persons of disease and suffering, an activity pursued by hospitals, is a charitable purpose. (*American College of Surgeons v. Korzen*, 36 Ill.2d 340, 224 N.E.2d 7.) Cases which have found certain hospitals to be charitable institutions have utilized the same characteristics as the above cases. *Sisters of the Third Order of St. Francis v. Board of Review*, 231 Ill. 317, 83 N.E. 272; *People ex rel. Cannon v. Southern Illinois Hospital Corp.*, 404 Ill. 66, 88 N.E.2d 20.

■■ While we are not bound by the tests utilized under section 19.7 of the Revenue Act which determine what a charitable organization is, we feel they offer a good basis for defining the meaning of the term

"charitable institution" as used in section 2(a) of the Fair Employment Practices Act.

■■ The hospitals in the instant case meet each of these tests. The corporation which owns the hospitals has neither issued stock nor paid out dividends nor does it have the power to do so. The charters of the Medical Foundation and the Missionary Sisters corporations stated that among their corporate purposes is the raising of funds, loans and gifts for the use and benefit of the Medical Center corporation which operates the hospitals. All the funds raised for and profits accrued from the hospitals are applied to the operation of the hospitals. No profits accrue to the private benefit of any individual or organization. Finally, the hospitals admit a number of free patients who are unable to pay. Even if patients who are able to pay are required to do so, the hospitals still would remain eligible for the status of a charitable organization under section 19.7. (*Sisters of the Third Order of St. Francis v. Board of Review*, 231 Ill. 317, 83 N.E. 272; *People ex rel. Cannon v. Southern Illinois Hospital Corp.*, 404 Ill. 66, 88 N.E.2d 20.) We are of the opinion that the hospitals and the Medical Center corporation which operates them are charitable institutions within the meaning of section 2(d) of the Fair Employment Practices Act.

■■ The second requirement for the defendants to qualify for an exemption under the Act is that their institutions must be "owned and conducted by, or affiliated with, a church or religious institution." (Ill. Rev. Stat. 1971, ch. 48, par. 852(d).) Prior to January 5, 1973, the hospitals were owned and operated by a corporation known as the Missionary Sisters of the Sacred Heart. This corporation was the legal entity under which an order of nuns of the Roman Catholic Church conducted their business concerning the hospitals in question. We are of the opinion that there is no question that this religious order owned and operated the hospitals prior to January 5, 1973. The hospitals are therefore exempt under the Act.

■■ The Commission, however, contends that we must examine the legal structure of this corporation after January 5, 1973, and the other three corporations which were created on January 5, 1973. It must be noted that all the unfair employment practices the defendants were charged with were alleged to have taken place prior to January 5, 1973. We are of the opinion that the hospitals' status at the time the alleged unfair employment practices took place determines whether the defendants are exempt. However, even if the unfair employment practices were of a continuing nature which would extend beyond January 5, 1973, we do not find that the hospitals' status has changed so as to remove the

defendants from the exemption. Nothing relating to their status as a charitable institution was changed on January 5, 1973. The hospitals also remained affiliated with the religious order of the Missionary Sisters of the Sacred Heart. All the members and officers of the Medical Center corporation which operates the hospitals are members of this religious order, and the two separate corporations under the name of the Missionary Sisters have as one of their stated corporation purposes, the maintenance of these hospitals. Whether a court examines the hospitals' status prior to January 5, 1973, or subsequent to that date, there is sufficient evidence to find that the hospitals are charitable institutions affiliated with a religious institution.

■■ The Commission contends that the hospitals do not fulfill a religious purpose. However, even if this be true, there is no requirement under the second exemption that they fulfill a religious purpose. The Commission also contends that the Medical Center and the Missionary Sisters are separate corporate entities. This may now be true, but the statute only requires that the charitable institution be affiliated with a religious institution, not that it be the same corporate entity.

The Commission further contends that even if the hospitals are religiously affiliated charitable institutions, the legislature only intended to exempt such religiously affiliated institutions from religious discrimination in such cases. They contend the legislature did not intend to exempt such institutions from charges of racial or national origin discrimination as are charged in the instant case. The Commission, therefore, asks this court to construe the statute to limit the exemption to only religious forms of discrimination.

■■ When the language of a statute is clear and unambiguous, the courts must ascertain the statute's intent in accordance with the language used. In such a case the courts must not restrict or enlarge the plain meaning of the statute. (*Bovinette v. City of Mascoutah*, 55 Ill.2d 129, 302 N.E.2d 313; *Caterpillar Tractor Co. v. Industrial Com.*, 33 Ill.2d 78, 210 N.E.2d 215.) Section 3(a) of the Act (Ill. Rev. Stat. 1971, ch. 48, par. 853(a)) states that it is an unfair employment practice for "any employer" to discriminate on the basis of "race, color, religion, sex, national origin or ancestry" in respect to an individual's employment. Section 2(d) (Ill. Rev. Stat. 1971, ch. 48, par. 852(d)) then states that the term "employer" does not include any "charitable institution owned and conducted by, or affiliated with, a church or religious institution." Clearly section 2(d) has exempted such organizations from the provisions of the Fair Employment Practices Act listed in section 3(a) includes discrimination on the basis of race, color, national origin and ancestry. If the

legislature intended to make such an organization's exemption more limited, it could have so stated.

The Commission cites *King's Garden, Inc. v. F.C.C.* (D.C. Cir. 1974), 498 F.2d 51, for the proposition that a statute which permits a religiously affiliated organization to discriminate on a basis unrelated to religion violates the United States constitution. They also contend that a statute which allows such an organization to discriminate on the basis of race or national ancestry violates the Illinois constitution. Therefore, the defendants contend this court should construe the statute so as to avoid such unconstitutionality and cite *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Com.*, 42 Ill.2d 385, 251 N.E.2d 253, to support their contention.

The *Continental Bank* case states: "It is our duty to construe acts of the legislature so as to affirm their constitutionality and validity, if it can reasonably be done, and further if their construction is doubtful, the doubt will be decided in favor of the validity of the law challenged." (42 Ill.2d 385, 389, 251 N.E.2d 253, 257.) After examining the statute we can find no ambiguity or doubtful construction involved. The Commission's suggested construction goes against the clear intent of the statute. The construction the Commission desires cannot be reasonably done.

■■ Whether the statute as we construe it is constitutional or not, we do not decide. The constitutionality of a statute may not be raised on appeal if it was never raised at the trial court level. (*City of Chicago v. Birnbaum*, 49 Ill.2d 250, 274 N.E.2d 22; *People v. Amerman*, 50 Ill.2d 196, 279 N.E.2d 353.) The Commission ever raised the constitutional issue at the trial level.

The defendants, in addition to contending that they are exempt from the Act's provisions, have contended that the Commission's failure to file a complaint within 180 days of the filing of the charges defeats the Commission's right to proceed in the matter. We have already decided to affirm the trial court's decision on the basis of the defendants' exemption from the Act. It is therefore unnecessary to consider the contention related to the filing of a complaint.

For the reasons stated the orders of the circuit court dismissing the Commission's petition and refusing to vacate that dismissal are affirmed.

Orders affirmed.

GOLDBERG and EGAN, JJ., concur.