CHICAGO TEACHERS UNION, etc. et al., Plaintiffs-Appellants,

v.

Donald JOHNSON, individually and as Director of Labor, State of Illinois, et al., Defendants-Appellees.

No. 79-1780.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1980.

Decided June 19, 1980.*

---

* This appeal was originally decided by unreported order on June 19, 1980. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

**354**

Linda R. Hirshman, Chicago, Ill., for plaintiffs–appellants.

Richard J. Puchalski, Chicago, Ill., Gail C. Ginsberg, Chief, Legal Support Section, United States EPA, Chicago, Ill., for defendants–appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT and CUMMINGS, Circuit Judges.

1. The statute was amended in Act of Nov. 9, 1977, P.A. 80–1 (2d Spec. Sess.), 1977 Ill. Laws 3615, 3618 (codified at Ill.Rev.Stat. ch. 48, § 321.1) so that public school teachers would be covered after Jan. 1, 1978.

2. The Special Unemployment Assistance Program was a federal scheme under Title II of the Emergency Jobs and Unemployment Assistance Act of 1974, P.L. 93–567, 88 Stat. 1850–53, as amended by the Emergency Compensation and Special Unemployment Act of 1975, P.L. 94–45, 89 Stat. 240–42 (and in conjunction, the Second Supplemental Appropriations Act, 1975 P.L. 94–32, 89 Stat. 173, 178); the Emergency Jobs Programs Extension Act of 1976, P.L. 94–444, 90 Stat. 1481; and the Unemployment Compensation Amendments of 1976, P.L. 94–566, Title VI, 90 Stat. 2689–91. Title II is set forth as a note under Title 26 U.S.C. § 3304, at

FAIRCHILD, Chief Judge.

Plaintiffs in this class action are Chicago public school teachers seeking federal unemployment benefits for a three week layoff in June 1976. They claim that this period preceded the end of the 1975–76 academic year. We reverse.

On June 7, 1976 teachers employed by the Chicago Board of Education were informed that due to the lack of operating funds their teaching responsibilities were to terminate as of that date rather than June 29, the scheduled date established pursuant to state statutes. Public school teachers were not covered at this time under the Illinois Unemployment Compensation Act, Ill.Rev. Stat. ch. 48, § 300–780 (1975).[1] Unemployment benefits were provided, however, under federal law, under the Special Unemployment Assistance Program, hereinafter SUA.[2] As stated in 26 U.S.C. § 3304, Part A, § 201 of the Act, this was a temporary federal program for workers who were unemployed during a period of aggravated unemployment and who were not otherwise eligible for unemployment allowances under any other law. The program was to be carried out jointly by the state and federal governments with the federal government providing the funds. The administration of granting benefits was placed in the hands of the state agency pursuant to an agreement between the state and the Secretary of Labor and claims for and payment of SUA compensation were to be controlled by the applicable state law.[3] The program

359–63. By its own terms the program has not been in effect since 1978.

3. Grants To State: Agreement With States. Sec. 202. Each state which enters into an agreement with the Secretary of Labor, pursuant to which it makes payments of special unemployment assistance in accordance with the provisions of this part and the rules and regulations prescribed by the Secretary ... shall be paid by the United States ... such amounts as are deemed necessary by the Secretary ... to carry out the provisions of this part in the state. Assistance may be paid under this part to individuals only pursuant to such an agreement.

(26 U.S.C. § 3304, Part A, § 202)
Applicable State Law Provisions. Sec. 207. Except where inconsistent with the provisions of this part, the terms and conditions of

thus provided for state officials procedurally acting under state law, with federal law controlling substantive entitlements where inconsistent with state law. Federal regulations implementing the program set up a procedure for Department of Labor review of state determinations as to SUA entitlement.[4]

Applications for SUA benefits by Chicago public school teachers were made, for the 16 working days lost, to the Illinois Bureau of Employment Security, Division of Unemployment Insurance. The Bureau initially made an inquiry to the United States Department of Labor as to the eligibility of these teachers and received a telegram from the Department indicating that the end of the school year depended upon applicable state law. The Bureau thereafter made the determination that the schools had officially closed on June 7, 1976 and that teachers who had commitments to return in the fall were ineligible to receive benefits under 26 U.S.C. § 3304, Part A, § 203(b), which provided:

> (b) An individual who performs services in an instructional, research, or principal administrative capacity for an educational institution or agency shall not be eligible to receive a payment of assistance or a waiting period credit with respect to any week commencing during the period between two successive academic years (or, when the contract provides instead for a similar period between two regular but not successive terms, during such similar period if—
>
> (1) such individuals performed services in any such capacity for any educational institution or agency in the first of such academic years or terms; and
>
> (2) such individual has a contract to perform services in any such capacity for any educational institution or agency for the later of such academic years or terms.

In making its determination that June 7 was the end of the school year and that the

following three weeks fell within the statute, the Bureau placed emphasis on the absence of a recall date before the end of the school year and on the fact that students received credit for the entire school term.

In lieu of taking an administrative appeal, as provided for under state law, plaintiffs filed a two-count complaint in district court against the Director of Labor of the State of Illinois and various state officials within that department and against the Secretary of Labor of the United States and federal officials within the United States Department of Labor, alleging that defendants violated both the federal Act and the Fourteenth Amendment. Plaintiffs sought a declaratory judgment, preliminary and permanent injunction, and *mandamus* relief compelling the defendants to determine that plaintiffs were eligible for unemployment compensation benefits under the federal program. After denying various preliminary motions, including a request for preliminary injunction, reported at 421 F.Supp. 1261 (N.D.Ill.1976), the district court granted defendants' motion for summary judgment. It is from this judgment that plaintiffs appeal.

■ The issue for our consideration, as we view it, is whether the three week period, prior to the originally prescribed end of the school year, in which the teachers did not work, constitutes a period of unemployment for which the federal Act was intended to supply benefits or was a period between two successive academic years within the meaning of 26 U.S.C. § 3304, Part A, § 203(b). The teachers who are in this class on appeal are teachers who were laid off for three weeks in advance of the end of the school year of 1976 but who did have a commitment for the 1976–77 academic year. They contend that this was a period of unemployment and that they are eligible for SUA benefits. The state defendants

---

the applicable State unemployment compensation law which apply to claims thereunder for regular compensation and the payment thereof shall apply to claims for assistance under this part and the payment thereof.

(26 U.S.C. § 3304, Part A, § 207)

4. 20 C.F.R. § 619.1–.22 (1979).

take the position that this was a period "between two successive academic years" within the meaning of the Act. The federal defendants claim that they are not proper parties to this action since their duty to review the state determination did not arise in view of plaintiffs' failure to exhaust state administrative remedies. Additionally, they claim that the question as to when the school year ended is a question of state law and that even if the department did undertake a review, it could not and would not change the state's determination. We conclude that the three-week period the teachers were separated from their work was a period of unemployment under the federal Act and not a period covered by the exclusion in 26 U.S.C. § 3304, Part A, § 203(b).

## I.

In granting defendants' motion for summary judgment and in its decisions denying plaintiffs' motions for preliminary injunction and summary judgment, the district court viewed the question of plaintiffs' entitlement to SUA benefits as a question of state law and within the expertise of the state agency to determine when the school year ended, so as to apply the "between two successive academic years" standard. The court stated in its opinion denying the preliminary injunction:

> But the critical issue is not whether the court perceives payment of SUA benefits to these teachers as reasonable or permissible. On the contrary, the issue is whether having authorized the state agency to make the necessary eligibility determinations consistent with state law,

the Bureau determination in the case is in plain conflict with the ascertainable legislative intent. After this preliminary review of the legislative history the court is persuaded that it is not.
(421 F.Supp. at 1265).

 The federal Act and the regulations implementing it provide for the application of state law, where consistent with the provisions of the federal Act, on such procedural and substantive matters as claim filing and reporting, notice requirements and disqualifications.[5] Congress established substantive law providing unemployment compensation benefits to a whole class of employees traditionally excluded from state law coverage, including employees of public bodies, like teachers. The ultimate question of entitlement of a class of people under this federal law is a federal question, not a question of state law, and no deference is owed to the state unemployment bureau as to when the school year ended. This court properly has jurisdiction over these state defendants.[6]

The facts in this case convince us that the three-week period of separation from work was a period of unemployment and not a period Congress intended to exclude under 26 U.S.C. § 3304, Part A, § 203(b). The annual calendar prepared and adopted by the Board of Education of the City of Chicago for the 1975–76 academic year provided for the closing of schools for summer vacation on June 29, 1976. This calendar was promulgated in accordance with Illinois School Code, Ill.Rev.Stat. ch. 122, §§ 1–1 to 36–1, which empowered the Board of Education to make provisions for a school year of not less than 9 months (§ 24–18) and of

5. The provisions of the applicable State law which shall apply to claims for, and the payment of SUA ... include, but are not limited to:
 (1) Claim filing and reporting;
 (2) Information to individuals, as appropriate;
 (3) Notices to individuals and employers, as appropriate, including notice to each individual of each determination and redetermination of eligibility for or entitlement to SUA...;
 (4) Determinations and redeterminations;

 (5) Ability to work, availability for work, and search for work; and
 (6) Disqualifications.
 20 C.F.R. § 619.10 (1979).

6. We note, as did the court below, that plaintiffs' failure to exhaust state administrative remedies is not a bar to this court's review and no party here has argued to the contrary. In view of the Director's acquiescence in the decision to deny these benefits, such appeals would have been futile. *Bradley v. Laird,* 449 F.2d 898 (10th Cir. 1971).

at least 185 days (§ 10–19). The Board's own rules provided that the school year should not be less than 9 months between September and June 30 (Rules and Regulations of the Board of Education, City of Chicago, Rule 5–1). Under Ill.Rev.Stat. ch. 122, (§ 18–12) there was a reduction in state aid to any district which failed to comply with the 185 day requirement. The employment contract between the Chicago Teachers Union and the Board of Education, for the 1975–76 year, provided for a school calendar in which employees were scheduled to receive 39 weeks of salary, paid over 41 weeks.

The layoff on June 7 was due to the lack of funds to continue the operation of the schools until June 29. As a result, the teachers received 36 weeks of pay as opposed to the 39 contracted for and the school did not meet the minimum number of days required under state law, subjecting the Board to a reduction of state aid.

■ We are not unmindful of the fact that school children did receive credit for the full term, but we do not think this is controlling in excluding teachers from receiving benefits for a genuine economic lay–off. The period excluded under 26 U.S.C. § 3304, Part A, § 203(b) was intended to be that period characteristic to the educational profession and within the expectation of the teachers. The legislative history surrounding this section shows that it intended for all professional educational workers to be treated the same during the summer break:

> In the absence of this prohibition, a number of states have indicated that they find no provision in their laws by which they can deny emergency assistance to professional educational workers who are only temporarily unemployed during this period. Payment of such emergency assistance to workers who have contracts for the succeeding school term would be contrary to the treatment of their counterparts in institutions of higher education, who are covered under regular unemployment insurance. In Public Law 91–373, Congress mandated that college

and university teachers, researchers, and administrators with contracts for both terms be denied benefits with respect to the periods between terms. H.R. 6900 [Pub.L.No. 94–45] would provide the same treatment with respect to these categories of employees of primary and secondary schools who are otherwise eligible for Special Unemployment Assistance.

(S.Rep. No. 94–208, 94th Cong. 1st Sess. 5–6 *reprinted in* [1975] U.S.Code Cong. & Admin.News 377, 382).

In this case state law required and the teachers expected the school term to end on June 29. Granted that for some purposes, such as student credit, the term was deemed to have been completed on June 9, it remains that the reasonable expectation of teachers of continuous employment was frustrated because funds ran out. We cannot believe that Congress could have intended a period which, from the workers' standpoint, was so obviously a time of unemployment to be excluded from benefits as "between two successive academic years."

There are several state courts which have considered claims by teachers for benefits during the summer vacation period; however, these decisions, for the most part, do not deal with the situation presented here and do not help us in our analysis. *Anderson v. Employment Division*, 25 Or.App. 845, 551 P.2d 482 (1976); *Calamusa v. Board of Review*, 164 N.J.Super. 325, 396 A.2d 351 (1978); *Robinson v. Administrator, Department of Employment Security*, La.App., 356 So.2d 477 (1977).

In a factual situation which did raise an identical interpretative question regarding 26 U.S.C. § 3304, Part A, 203(b), a state court refused to interpret the "between two successive academic years" to cover a period at the start of a new semester when teachers were not working due to a work stoppage. *McKeesport Area School District v. Commonwealth Unemployment Compensation Board of Review*, 40 Pa.Cmwlth. 334, 397 A.2d 458 (1979). The collective bargaining agreement between the school district and the union in that case was to

expire on August 30, 1976. The parties had originally agreed to extend the expired contract on a day–to–day basis during the negotiations and the union agreed to continue to work beyond August 30 under the terms of the existing contract. On September 5 the school district notified the union that it was cancelling the day–to–day extension and would not allow the union to work under the expired agreement. With classes scheduled to start on September 7, the work stoppage continued until September 23, 1976; SUA benefits were granted for the period of the work stoppage. The school district appealed to the state court and based one of its arguments on § 203(b), contending that the "academic year" did not begin until September 23, 1976, when both teachers and students reported for work and that the claimants were thus unemployed between "two successive academic years." The court disagreed and held:

First, we note that, had the work stoppage commenced after only one day of academic instruction or even after half a day, Section 203(b) would clearly have no application. We are reluctant to hold that such an insignificant fact is determinative. Moreover, the phrase in parenthesis which follows the term 'academic years' in Section 203(b) refers to a 'similar period between two regular ... terms' (emphasis added), indicating that Congress considered an 'academic year' to be a regular, scheduled period, as opposed to an irregular, unpredictable period. The period of unemployment involved here did not occur between two regular periods; in fact, the period of unemployment arose suddenly and virtually without warning. In light of these considerations, we are convinced that Congress did not intend Section 203(b) to be applicable to the facts of this case.

397 A.2d at 462.

We reverse the decision of the district court and remand this case to that court for the purpose of entering judgment in accordance with this opinion.

## II.

■ In view of our decision to reverse, we must decide whether the federal defendants are properly in this case. They have claimed throughout that they are not proper parties to this action. We agree with defendants that *mandamus* is inappropriate. However, we conclude that they are necessary parties, under Rule 19(a).

Federal regulations implementing the SUA program provide for Department of Labor review of each judicial or administrative decision on an individual's entitlement to SUA benefits. (20 C.F.R. § 619.1(d)(1)). Additionally, on request of the Department, a state agency is to forward to the Department a copy of any determination or redetermination of SUA benefits. If the Department disagrees with a state ruling and the state is notified, the state agency is obligated to appeal the questioned ruling through its available procedure. (20 C.F.R. § 619.1(d)(2)). If a ruling which the Department believes to be inconsistent with the Act becomes final at the state level, the Secretary may terminate the SUA agreement and termination of the agreement terminates the SUA program within the state and no further benefits can be paid (20 C.F.R. § 619.1(d)(3) and 26 U.S.C. § 3304, Part A, § 202).

Our decision that the question of law presented in this appeal is a federal question and that the period involved was a period of unemployment under the federal Act is contrary to the Department of Labor's position. In its brief the Department asserts that the question of when the spring 1976 term ended for the purpose of 26 U.S.C. § 3304, Part A, § 203(b) and whether that provision excludes the weeks between June 7 and 29 is one for determination by the state agency pursuant to state law.

The federal defendants, given the review procedure under the federal regulations, will ultimately be called upon to process the claims of these teachers, once the state has completed its processing. The regulations do give the department the option of refusing federal funds to a state, by terminating the agreement, if it disagrees with a

final state ruling, and with respect to the question presented here the department has indicated a position inconsistent with that of plaintiffs. We conclude that joinder is thus necessary so plaintiffs can be accorded complete relief here and are not faced with the prospect of relitigating the issue.

Of course we do not decide the ultimate entitlement of any individual applicant, only that in no case are these three weeks to be excluded by § 203(b).

The Clerk of the Court is directed to enter judgment reversing the judgment appealed from and remanding the cause for entry of judgment consistent with this opinion.