CHRISTINE DORAN, Plaintiff-Appellant, *v.* THE DEPARTMENT OF LABOR *et al.*, Defendants-Appellees.

First District (5th Division)   No. 81—2717

Opinion filed July 15, 1983.

Lawrence A. Poltrock and Stephen G. Daday, both of Chicago (DeJong, Poltrock & Giampietro, of counsel), for appellant.

Patricia J. Whitten and Christine Holtz, both of Chicago, for appellees.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

Plaintiff, a teacher employed by the Board of Education of the City of Chicago (Board of Education), filed a complaint in the circuit court of Cook County pursuant to the provisions of the Administrative Review Act (Ill. Rev. Stat. 1981, ch. 110, par. 264 *et seq.*), seeking judicial review of a decision rendered by the Illinois Department of Labor Board of Review (Board of Review) which affirmed the denial of unemployment compensation benefits to plaintiff on the ground that she did not satisfy the eligibility requirements of section 612 of the Unemployment Insurance Act (the Act) (Ill. Rev. Stat. 1981, ch. 48, par. 442).[1] The circuit court affirmed the Board of Review's decision. On appeal, plaintiff contends that the court's decision was against the manifest weight of the evidence, and, thus, should be reversed. For the reasons that follow, we affirm.

From 1970 until June 1980, plaintiff taught at the Simpson Alternative School for Girls (Simpson) on a 47-week schedule, *i.e.*, the "regular 39-week year, plus eight weeks during the summer." On June 26, 1980, plaintiff was informed by the Board of Education that due to budgetary considerations, Simpson would not be offering an eight-week summer session. Thus, her services would terminate at the end of the 39-week term and would not be needed again until the fol-

---

[1] Section 612(B)(1) of the Act states, in pertinent part:

"1. An individual shall be ineligible for benefits, on the basis of wages for service in employment in an instructional *** capacity performed for an educational institution, for any week which begins after December 31, 1977, during a period between two successive academic years, or during a similar period between two regular terms, whether or not successive *** if the individual performed such service in the first of such academic years (or terms) and if there is a contract or a reasonable assurance that the individual will perform service in any such capacity for any educational institution in the second of such academic years (or terms)."

lowing September. As a result, plaintiff filed a claim for unemployment insurance benefits with the Division of Unemployment Insurance for the eight-week period and subsequently received benefits in the amount of $540.

Shortly thereafter, the claims adjudicator issued a redetermination stating that, pursuant to section 612 of the Act, plaintiff was not eligible for benefits and the amount paid to her must be recouped. Plaintiff then filed an application for reconsideration with the Department of Labor, and, at the subsequent hearing, argued that the period from June 26, 1980 (layoff date), to August 22, 1980 (date her 47-week term had been scheduled to end), constituted a portion of her regular 47-week academic term and was not a period between academic terms. Therefore, plaintiff stated, section 612 of the Act was inapplicable and should not operate as a bar to her eligibility to receive unemployment benefits. The referee concluded that during the period in question, plaintiff was a teacher between academic terms with a reasonable assurance of returning to work at the start of the successive term. Therefore, pursuant to section 612, plaintiff was ineligible for unemployment benefits and that amount received by plaintiff constituted overpayment and must be recouped. As a result, plaintiff appealed to the Board of Review which, in turn, affirmed the referee's decision.

OPINION

The issue for our consideration is whether the eight-week period following the end of the 39-week regular term constitutes a period of unemployment for which the Act was intended to supply benefits or was a period between two successive academic years within the meaning of section 612(B)(1) of the Act. Plaintiff contends that the defendants, the hearing officer, the referee and the trial court all made "one basic fundamental error" in arriving at their determination of plaintiff's ineligibility. All assumed that plaintiff's 47-week employment period consisted of two distinct time periods: a 39-week regular term and an eight-week summer term. Plaintiff, on the other hand, argues that she was employed to work one 47-week term, commencing September 5 and terminating August 22. Therefore, when she was laid off at the end of the 39th week of that term, her originally prescribed 47-week term was prematurely terminated and she was not between academic terms. In distinguishing her status from that of a 39-week teacher, plaintiff testified that she received different benefits and that her wages were subject to different pension deductions.

As support for her position, plaintiff relies on *Chicago Teachers*

*Union v. Johnson* (7th Cir. 1980), 639 F.2d 353. Plaintiff's reliance, however, is misplaced. As shall be discussed, *Chicago Teachers Union* is more supportive of defendants' position. In *Chicago Teachers Union*, the Board of Education informed the teachers that their services were terminated as of June 7, 1976, rather than June 29, 1976, as scheduled. As a result, the teachers sought unemployment benefits. The question for the court was whether the three-week period prior to the originally prescribed end of the school year, in which the teachers did not work, constituted a period of unemployment for which the Federal Special Unemployment Assistance Program (26 U.S.C.A. sec. 3304, Historical Note, Part A, sec. 201, at 359 (1979)) was intended to supply benefits or was a period between two successive academic years. The court held that the teachers were entitled to benefits on the ground that the teachers were separated from their employment three weeks "prior to the originally prescribed end of the school year." (639 F.2d 353, 355.) In determining what constitutes the academic school year, the court looked to the annual calendar prepared and adopted by the Board of Education which specifically stated that the schools were to close for summer vacation on June 29, 1975.

■■ ■ At the outset of our legal analysis, we note that in an administrative review case, it is not the court's duty to weigh evidence. Rather, the court's function is to ascertain whether the findings and decision of the agency are against the manifest weight of the evidence. (*Peterson v. Board of Trustees* (1973), 54 Ill. 2d 260, 262-63, 296 N.E.2d 721, 723.) In this regard, an administrative decision may not be adjudged to be against the manifest weight of the evidence unless it appears that the opposite conclusion is clearly evident. *Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 867, 335 N.E.2d 126, 129.

With the scope of review thus defined, we direct our attention to section 612(B)(1) of the Act upon which defendants rely for their argument that the period of time at issue was between academic terms. Pursuant to section 612(B)(1), plaintiff is ineligible for benefits if: (1) the period in question is between two successive academic years or regular terms, whether or not successive; (2) plaintiff performed in an instructional capacity in the first academic year (or term); and (3) plaintiff has a contract or reasonable assurance that she will be reemployed in an instructional capacity in the second academic year (or term).

In the case at bar, the second and third criteria are not at issue. Plaintiff agrees that she was employed in an instructional capacity for the first term and that she had a reasonable assurance of being em-

ployed in the second term. Our focus, then, is on the first criterion, and, in particular, on the terms "academic years" and "academic terms." Because the Act indicates that these terms are interchangeable, our analysis of one will be inclusive of the other.

■ It is a fundamental rule of statutory construction that the language of a statute must be given its plain, ordinary meaning. Courts do not have the power to legislate. Instead, they must interpret the law as announced by the legislature. (*Chicago-Midwest Meat Association v. City of Evanston* (1981), 96 Ill. App. 3d 966, 969, 422 N.E.2d 205.) As part of its lawmaking function, the legislature has the power to articulate reasonable definitions of any term within its enactments and such definitions for the purpose of its acts will be sustained to the exclusion of hypothetical indulgences. *Heerey v. Zoning Board of Appeals* (1980), 82 Ill. App. 3d 1088, 1092, 403 N.E.2d 617.

■ Although section 612(B)(1) of the Act does not specifically define "academic term," guidance to ascertaining the legislature's intent can be found in the basic rule of statutory construction that two statutes on the same subject matter and parts of a comprehensive statutory scheme should be read *in pari materia* in order to determine legislative intent and avoid injustice. (*Clement v. O'Malley* (1981), 95 Ill. App. 3d 824, 831, 420 N.E.2d 533.) Applying this rule, we look to the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 1—1 *et seq.*) (Code) for interpretative direction regarding section 612(B)(1), recognizing that the code and section 612(B)(1) are parts of a comprehensive statutory scheme to effectuate the efficient administration of the Chicago public school system. In this regard, section 10—19 of the Code states, in pertinent part:

> "Each school board shall annually prepare a calendar for the school term, specifying the opening and closing dates ***." (Ill. Rev. Stat. 1981, ch. 122, par. 10—19.)

Further, section 24—1 of the Code states, in pertinent part:

> "The school term shall consist of at least the minimum number of pupil attendance days required by Section 10—19 ***." Ill. Rev. Stat. 1981, ch. 122, par. 24—1.

■ Pursuant to the authority delegated to it by section 10—19 of the Code, the Board of Education prepared and adopted the 1979-80 school year calendar, as amended, which expressly provided that the opening and closing dates of Chicago public schools would be September 5, 1979, and June 26, 1980, respectively. Therefore, we conclude that the academic term intended by the legislature was the regular term of 39 weeks designated by the school calendar. The only exceptions to the 39-week schedule were those 47-week schools specifically

designated as such on the calendar, *i.e.*, Washburne Trade School and practical nursing programs. Simpson was not listed among these exceptions, and, in fact, the calendar expressly indicated that the Simpson summer session was a separate 8-week term. Therefore, we concur with the trial court that the period for which plaintiff seeks benefits is a period between academic terms, and, thus, pursuant to section 612(B)(1) of the Act, she is ineligible for unemployment benefits.

Affirmed.

SULLIVAN and MEJDA, JJ., concur.