(No. 31114.—

THE PEOPLE *ex rel.* Lawrence Cannon, County Collector, Appellee, *vs.* SOUTHERN ILLINOIS HOSPITAL CORPORATION, Appellant.

*Opinion filed September 22, 1949.*

CHARLES W. DENHAM, of Herrin, for appellee.

ORWIN H. PUGH, of Carbondale, for appellant.

Mr. JUSTICE DAILY delivered the opinion of the court:

The appellant, Southern Illinois Hospital Corporation, filed objections in the county court of Williamson County

to the county collector's application for judgment against, and order of sale of, appellant's real property located in Herrin for the nonpayment of taxes for the year 1947. In a separate action appellant sought a refund of personal taxes for the same year, which had been paid under protest. Since the same issues were presented in both proceedings, the causes were consolidated by the county court, and, after a hearing, that court overruled the objections to the general taxes and denied the prayer for a refund of personal taxes. The revenue being involved, appellant brings a direct appeal to this court to review the findings of the county court.

By its objections, appellant claims to be a charitable institution within the purview of section 19(7) of the Revenue Act of 1939, (Ill. Rev. Stat. 1947, chap. 120, par. 500,) and thus exempt from taxation. The statute, which was enacted by virtue of the authority contained in section 3 of article IX of our constitution, creates the following exemptions: "All property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or in any other state of the United States, and all property of old people's homes, when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit; and all free public libraries." In determining whether property is included within the scope of an exemption, the statute must be strictly construed and all debatable questions resolved in favor of taxation. (*People ex rel. Goodman* v. *University of Illinois Foundation,* 388 Ill. 363; *Turnverein "Lincoln"* v. *Board of Appeals,* 358 Ill. 135.) Courts have no power to create exemption from taxation by judicial construction, and the burden of establishing statutory authority within the limitations of the constitution for such an exemption rests upon the person asserting it. (*Oak Park Club* v. *Lindheimer,* 369 Ill. 462; *City of Mattoon* v. *Graham,* 386 Ill. 180.) In ascertaining whether property is exempt

under a constitutional or statutory provision the primary use of such property must be considered and is the controlling factor. However, each individual case must be determined from the facts presented. (*People ex rel. Goodman* v. *University of Illinois Foundation,* 388 Ill. 363; *People ex rel. Pearsall* v. *Catholic Bishop,* 311 Ill. 11.) The principal and distinctive features of a charitable organization are that it has no capital and no provisions for making dividends or profits but derives its funds mainly from public and private charity and holds them in trust for the objects and purposes expressed in the instrument or charter creating the organization. (*People ex rel. Hellyer* v. *Morton,* 373 Ill. 72; *Congregational Publishing Society* v. *Board of Review,* 290 Ill. 108.) The same two cases hold that it does not lose its charitable character, and consequent exemption from taxation, by reason of the fact that the recipients of some of its benefits who are able to pay are required to do so, where no profit is made but the amounts received are applied in furthering its charitable purpose. The early case of *Crerar* v. *Williams,* 145 Ill. 625, defined a charity as follows: "A charity, in a legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burthens of government." A hospital not owned by the State or any other municipal corporation, but which is open to all persons, regardless of race, creed or financial ability, has, on several occasions, been held by this court to be a charitable organization within the meaning of the Revenue Act, and exempt from taxation, provided all funds received by the hospital are devoted to its charitable purpose and no part of the money received by

it is permitted to inure to the benefit of any private individual engaged in managing the charity. (*Sisters of St. Francis* v. *Board of Review*, 231 Ill. 317; *Board of Review* v. *Provident Hospital*, 233 Ill. 242; *German Hospital* v. *Board of Review*, 233 Ill. 246; *Board of Review* v. *Chicago Policlinic*, 233 Ill. 268.) It is not necessary that such hospitals receive persons having contagious diseases, to entitle them to exemption. *Sisters of St. Francis* v. *Board of Review*, 231 Ill. 317.

The foregoing pronouncements of this court pertaining to the exemption of charitable organizations from taxation are fully recognized by both parties to this appeal, for each holds them forth in support of contentions made in this court, when applied to the facts of the present case. The evidence introduced by appellant established that the Southern Illinois Hospital Corporation was organized under the laws of Illinois as a nonprofit corporation and received a charter April 15, 1946, which authorized it to acquire and build, operate and improve a hospital in the city of Herrin. The charter contained a similar authorization with reference to a hospital in the city of Carbondale, Jackson County, but that property is not here involved. After organization of the corporation and adoption of by-laws, the charter was amended October 7, 1946, and a dissolution plan adopted which provides that the physical plants of the hospitals will pass to the governing bodies of the respective cities in the event of dissolution. The organizers were Doctors Lewis, Brown, Taylor and Barrow, all of whom had just returned from United States service with the exception of Barrow who was still so employed. The corporation is organized as a nonprofit corporation, has no capital structure or stock, pays no dividends, pays no directors' fees, and all proceeds over and above expenses are put back into the corporation for the expansion of services, equipment and the physical plant. Doctors Taylor, Lewis and Brown, three of the incorporators, perform specialized functions for the hos-

pital but make no charges and receive no salaries, and fees received for such work go into the general hospital fund. Full-time employees, including nurses, nurses-aides, labor and administrative personnel, receive salaries totalling approximately $12,000 monthly.

The hospital functions with an open staff, whose organization is controlled by staff members, thirty-four in number, eleven of whom are from Herrin. There is no discrimination as to race, creed or color either as to patients or members of the staff. The record shows that the hospital's eighty-five bed capacity had an average daily census of seventy-two for the year 1947, during which period three thousand persons were treated. The per diem cost rate of the hospital, according to the formula of the Illinois Division of Hospital Services, is $9.84. On relief cases treated, the hospital was paid from 90 per cent to 50 per cent of the per diem cost, dependent on the type of relief. It was paid $24,280 during 1947 for county relief cases, which figure was stated by witnesses to be 50 per cent less than the actual per diem cost for such county relief patients. In addition to the regular hospital facilities it appears that the hospital has a cancer clinic, trachoma control center, venereal clinic, and x-ray, blood bank and library departments, some of which are operated with funds, equipment and material furnished by the State and Federal governments and by the American Cancer Society.

The evidence further shows that the United States Treasury Department has ruled that the corporation is exempt from payment of income taxes. Proofs were also submitted of the excellence of the hospital's services; of its need in the Herrin area; and of its plans to expand with the assistance of Federal aid allowed to charitable hospitals.

It is readily apparent that the financial structure, policy on remuneration of officers and directors, application of fees collected, and the method and purpose of operation,

typify the appellant corporation as a charitable organization within the confines of the principles announced by this court. The trial judge was of the opinion, however, that appellant disqualified itself from tax exemption by its manner of admitting patients who are unable to pay for hospital services. This is also the only point urged by counsel for appellee on this appeal. The evidence as to admission of patients shows that all emergency cases presented to the hospital are treated without question as to ability to pay, and that all elective cases referred to the hospital by a staff member are accepted without question. In some elective cases the patient must wait until a vacancy is available. It is the practice that when an elective patient presents himself for treatment, he must pay a week's board in advance, if able to do so. If the patient states he is unable to pay, he is asked to wait until an investigation is made to see if he is eligible for relief, and arrangements made with the proper relief agency for payment. Ultimately, however, no patient is refused admission or treatment because of his inability to pay or inability to secure governmental aid. In the *Sisters of St. Francis case*, this court said with reference to the ability of a patient to pay: "It is then argued that this hospital should not be held to be an institution of public charity by reason of the great disparity between the number of charity patients and those who pay for the care and attention they receive at this institution. This objection seems to us without merit, so long as charity was dispensed to all those who needed it and who applied therefor, and so long as no private gain or profit came to any person connected with the institution, and so long as it does not appear that any obstacle, of any character, was by the corporation placed in the way of those who might need charity of the kind dispensed by this institution, calculated to prevent such persons making application to or obtaining admission to the hospital." The trial judge was of the opinion that the waiting period.

caused by investigating an elective patient's relief status is such an "obstacle" as is referred to in the foregoing opinion. In view of the fact that all emergency or acute cases are immediately treated without question of their ability to pay, and of the fact that all elective cases are ultimately treated despite their inability to pay or secure relief, we cannot agree that the waiting period is an obstacle "calculated to prevent such persons from making application to or obtaining admission to" appellant hospital. Sound business dictates that hospitals inquire into the ability of a prospective patient to pay, and it is the generally accepted practice of all hospitals. It is also within the realization of patients unable to pay, that they will be assisted, if eligible, by various governmental agencies, and an investigation of that possibility by the hospital would, in our opinion, induce rather than deter a destitute patient from seeking admission. If an elective patient's need became acute or an emergency before the investigation was completed, the evidence shows he would be treated immediately without regard to his ability to pay, thus the hospital's custom of investigation would not have the effect of depriving the needy of treatment. Since investigations are made only in nonemergency and nonacute cases, and treatment ensues regardless of the result, we cannot hold that the hospital has failed in its beneficent purpose, or created obstacles that would hinder or prevent needy persons from seeking and receiving the charity it dispenses. It was not, therefore, disqualified from tax exemption for this reason.

Counsel for appellee further states, but does not argue, that the operation of the Herrin hospital is not such that it relieves the burden of the government and is therefore not a charity. In view of the evidence that county relief patients are treated at a 50 per cent loss of the per diem cost, and other relief patients at a 10 per cent to 50 per cent loss, we must hold that such a contention is without merit. Inasmuch as the hospital is the only one in the

Herrin area, it is reasonable to speculate that the government is relieved of additional expenses it would incur in transporting and treating patients in hospitals removed from the area.

The judgment of the county court in the consolidated cause is reversed, and the cause remanded with directions to sustain appellant's objections and to grant the refund.

*Reversed and remanded, with directions.*