(No. 35067.—

W. Emmet Milward *et al.*, Appellants, *vs.* Herbert C. Paschen, County Treasurer, *et al.*, Appellees.

*Opinion filed March 20, 1959.*

Winston, Strawn, Smith & Patterson, of Chicago, (Reuben A. Borsch, Frank B. Gilmer, and David C. Keegan, of counsel,) for appellants.

Benjamin S. Adamowski, State's Attorney, of Chicago, (Francis X. Riley, and Edward J. Hladis, of counsel,) for appellees.

Mr. Justice Hershey delivered the opinion of the court:

Plaintiffs, trustees under an indenture dated February 19, 1945, creating a trust known as National Foundation of Funeral Service, hereinafter referred to as the Foundation, claiming to be a charitable and beneficent organization whose property is used exclusively for school and charitable or beneficent purposes, brought suit in the superior court of Cook County to enjoin the county treasurer, the county clerk, the State's Attorney and the county of Cook from exposing or offering the Foundation's property for sale for delinquent taxes for the years 1955, 1956, and 1957 and from prosecuting any action to collect the amounts claimed due for said general real-estate taxes levied, assessed or entered against said real property. After hearing evidence the court entered a decree dismissing the plaintiffs' complaint. The revenue being involved, plaintiffs bring their complaint directly to this court.

On July 12, 1957, the plaintiff trustees filed their complaint alleging the establishment of the Foundation by a certain indenture of trust which declared the purposes of the Foundation to be, in general, to (a) acquire and maintain a library relating to the profession and business of morticians, (b) maintain a model operating room and display room providing inspection of new techniques, merchandise, and equipment, (c) establish and maintain a school

of management for the profession, (d) make the library, display room, and school available to the profession, to writers, public officials, responsible persons, and members of the general public, and (e) advance the education of the profession to higher professional and business standards. The complaint alleged the Foundation received numerous gifts and in 1948 commenced operation of its School of Management, and in 1951 completed a building upon the property in question containing class rooms, auditorium, library, students' lounge, projection room, selection room for merchandising research, offices, and several unfinished rooms; that since 1952 the school, library, and other educational facilities of the foundation have been continuously and exclusively conducted and operated in the building upon the premises in question; that the school is designed (1) to provide management training for funeral services and allied fields through the school and extension courses, (2) to collect and preserve funeral service literature, (3) to provide merchandising research, and (4) to provide public education through surveys, research, fact finding, and the dissemination of information; that the faculty is recruited from universities, professions, and businesses; that the school is available to all; that students pay tuition when able, but scholarships and other expenses are provided in cases of need, and that the school is operated at a loss made up by gifts to the Foundation. The foundation has tax-exempt status for Federal income tax purposes.

The property involved is located in Evanston, Illinois. Plaintiffs assert that the real estate has been used exclusively for school purposes, is entitled to exemption from taxation, and that the Foundation is an institution of public charity and of a beneficent and charitable organization actually used for such purposes and is entitled to exemption from taxation. They claim that taxes were levied against the property for 1955, marked "exempt," and no tax bill was ever received by plaintiffs until late 1956; that the

property was assessed for 1956, that tax bills were issued and received by plaintiffs, and that plaintiffs exhausted their administrative remedies before the Board of Appeals. Plaintiffs further allege that said taxes are illegal and void, that they believe defendants expect to take action against plaintiffs or the real estate to collect said taxes, and prayed the court to find that the property is actually and exclusively used for school purposes, that the real estate is the property of a beneficent or charitable organization and was used for such purposes during the years 1955 and 1956, that the real estate is exempt from general real-estate taxes for the years 1955 and 1956 and for future years so long as it is exclusively used for school, charitable, or beneficent purposes, that the taxes levied and assessed against the real estate for 1955 and 1956, and all penalties, interest and costs be declared null and void, and that defendants be perpetually restrained and enjoined from exposing the real estate for sale or from instituting proceedings for collection of these taxes.

Defendants, in answering, denied that the real estate in question is and has been exclusively used by plaintiffs for school, charitable or beneficent purposes; denied that the general real-estate taxes levied against these premises for 1955 and 1956 and any interest, penalties, and costs accrued thereon are illegal and void; denied that plaintiffs are entitled to any relief, and prayed that the complaint be dismissed.

On October 9, 1957, plaintiffs filed an amendment to their complaint alleging the assessment of the premises for general real-estate taxes for 1957, that taxes will be extended for the year 1957 and defendants will attempt to collect them unless enjoined, and prayed that the Foundation's real estate be declared exempt from taxes for 1957 and for the same benefits with respect to 1957 prayed for the years 1955 and 1956. Defendant's answer was allowed

to stand as defendants' answer to the amendment to the complaint.

Upon hearing before the court, W. M. Krieger, a trustee and director of the Foundation, and Charles Nichols, the educational director of the Foundation, testified. Kreiger testified in regard to the creation of the Foundation by trust indenture, the Foundation's ownership of the property, and the erection of the improvements. He stated that the building had been used as a school since its erection, offering funeral business management, open to the public, and that the sole business of the Foundation is the management and operation of its School of Management, the extension courses and seminars, and its general education program. He identified the school catalog which was received in evidence, said that the income was from contributions, gifts, bequests, donations, and tuition, and was used 100 per cent in the operation of the school and its education program.

Nichols testified as to the instruction offered in the school. Upon the close of the plaintiffs' evidence, defendants renewed their motion to dismiss the complaint. The motion was allowed and the court entered a decree dismissing the complaint and the amendment thereto for want of equity.

Plaintiffs now bring their appeal here, insisting (1) that the Foundation's property is entitled to exemption from real estate taxes as property of a school used exclusively for school purposes, and (2) is entitled to exemption as the property of a charitable organization.

Section 3 of article IX of the constitution provides that the General Assembly may, by laws general in their application, exempt from taxation such "property as may be used exclusively * * * for school * * * and charitable purposes," Accordingly, the legislature has exempted " * * * all property of schools, including the real estate on which

the schools are located and any other real estate used by such schools exclusively for school purposes, * * *." (Ill. Rev. Stat. 1955, chap. 120, par. 500(1),) and "All property of institutions of public charity, all property of beneficent and charitable organizations, * * * when such property is actually and exclusively used for such charitable or beneficent purposes, * * *." (Ill. Rev. Stat. 1955, chap. 120, par. 500(7).) Plaintiffs claim exemption from general real-estate taxes for the Foundation property, under these provisions of the statutes. These statutory provisions are to be strictly construed, every presumption being against the intention to exempt from taxation. The burden of proving the right to exemption rests upon the plaintiffs who seek it. *Rotary International* v. *Paschen,* 14 Ill.2d 480.

Plaintiffs contend that the Foundation's School of Management offers systematic instruction in useful branches by methods common to institutions of learning, and its course of study provides educational training which would otherwise be furnished by publicly supported schools, thus lessening the tax burden upon the public, and making the foundation a school in the common acceptance of the word.

In summarizing the requirements necessary to be met to qualify a private institution for tax exemption as a school, we said in *Coyne Electrical School* v. *Paschen,* 12 Ill.2d 387, that there must be "first, a course of study which fits into the general scheme of education founded by the State and supported by public taxation; second, a course of study which substantially lessens what would otherwise be a governmental function and obligation." In arriving at this pronouncement we thoroughly reviewed the leading cases in this State upon the subject, as well as foreign jurisdictions.

Plaintiffs complain that to strictly apply the requirement that the course of study offered must be such as offered by

publicly supported institutions in order to be classed as a school for exemption purposes would lay the groundwork for State control and preemption in the field of education, and by competitive advantage to tax supported schools, destroy private institutions of learning. The plaintiffs fail to realize, however, that the basis for tax exemption in Illinois is the relief that such tax exempt institutions provide to the taxpayers' burden. By assuming some of the burden which otherwise must be borne by the taxpayer, an institution may qualify for tax exempt status. (*People ex rel. Brenza* v. *Turnverein Lincoln,* 8 Ill.2d 198.) Thus only may tax exemption be recognized in our society. Consequently, only by comparison to the course of study offered in the tax-supported system of education may a private institution qualify for tax exempt status.

The Foundation contends that it is a professional school offering courses designed to improve *management* in the mortuary profession, adapted to fit the needs of that particular profession; that although directed to funeral service application it has enrolled students who were neither actual nor prospective members of the profession, that its courses are mostly those taught throughout the Illinois public school system (such as psychology, public speaking, accounting, taxation, public relations, management, labor relations, and merchandising); that its director and faculty are as qualified as in most colleges and universities; that its courses are regularly conducted; and its methods are the same as those employed in other schools. The Foundation's course is, however, given annually in June, with additional specialized courses in one management area being offered at various times throughout the year. During the basic four-week general course, classes commence every hour on the hour for fifty-minute periods from 9:00 A.M. to 4:50 P.M., with fifty minutes for lunch. It is difficult to conclude that the course of study provided by the Foundation is, upon

this state of facts, systematic instruction in useful branches by methods common to schools and institutions. *People ex rel. McCullough* v. *Deutsche Gemeinde,* 249 Ill. 132.

The courses and the intensity of their instruction do not compare favorably with the courses offered in the Departments of Mortuary Science and of Mortuary Practice, as set forth in the bulletins from the University of Minnesota, Wayne State University, and Temple University, offered in evidence by plaintiffs. The courses offered by the Foundation appear to be only a superficial, or at least a brief instruction in courses constituting a minor part of the study of mortuary science. It is more a symposium on how to conduct a funeral service, rather than a course of instruction in the funeral service business.

The requirements of the *Coyne case* do not require that a private institution duplicate the educational programs of tax supported schools, to qualify for exemption. The course of study need only fit within the general scheme of education provided by the State in the tax supported schools.

The course of study provided by the Foundation is thus not akin to the scheme of education offered by the State in tax-supported institutions, and certainly cannot be said to relieve the tax burden of the citizens. The Foundation's School of Management is therefore not such a school as qualifies for tax exempt status. It may be called a school, as it does instruct, but like dancing, riding, deportment and other such schools, it is not a school in the ordinary sense. (*People ex rel. McCullough* v. *Deusche Gemeinde,* 249 Ill. 132.) No evidence is offered proving the Foundation to be a school in the ordinary sense, when, how, and where its seminars are conducted, or that the course of study is accredited. In this respect plaintiffs have not met their burden.

In order to qualify its property for exemption as the property of a charitable organization, the Foundation must prove that the property is owned by a charitable organiza-

tion, and that it is used exclusively for charitable purposes and not leased or otherwise used with a view to profit. (*Rotary International* v. *Paschen,* 14 Ill.2d 480.) The distinctive characteristics of a charitable organization are that it has no capital, capital stock or shareholders, earns no profit and pays no dividends, but derives its funds mainly from public and private charity and holds them in trust for the objects and purposes expressed in its charter. (*People ex rel. Cannon* v. *Southern Illinois Hospital Corp.* 404 Ill. 66.) The Foundation has no capital, capital stock or shareholders. The testimony establishes that it operates at a deficit, and it pays no dividends. It is alleged and testified that its income is from tuition, with bequests and contributions making up its deficit. The size of its deficit, its income from tuition, and the sum of bequests and contributions and their source are not made known for any year or years. The budget and expenses of the Foundation are not put in evidence. If most of its support is from tuition, then its funds are not derived "mainly from public or private charity." From this record we cannot determine that fact. Plaintiffs have thus not met their burden of proving that their funds are derived mainly from public or private charity; hence they have failed to prove the Foundation to be a charitable organization. *Coyne Electrical School* v. *Paschen,* 12 Ill.2d 387.

To be charitable in purpose, the property must be applied for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering and constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of mankind. (*Coyne Electrical School* v. *Paschen,* 12 Ill.2d 387.) Plaintiffs insist that the facilities of the Foundation are available to the general public (such as its courses and its library); the tuition charges do not cover the cost of

operation, needy students receive instruction without cost; the general public benefits from a properly managed mortuary profession; and the students are better able to earn a living and establish themselves for life, thus relieving the State of a considerable burden.

We are provided with no evidence as to the cost of operating the "school," the number of scholarships provided, or if in fact any are or have been given. If alms are given, we are not informed of that fact. The charity performed must benefit mankind in general and must do so directly. The Foundation primarily serves the mortuary profession, and is designed to bring greater commercial success to that profession. The State system of education has no such burden to meet.

The Foundation is not required to accept the public generally, and specifically states in its bulletin that no application is binding which is not accompanied by the full tuition fee.

There is no benefit directly to mankind in general from the activity of the Foundation, differing from that associated with any lawful endeavor. Such incidental benefit as may accrue cannot afford the basis for tax exemption. (*International College of Surgeons* v. *Brenza,* 8 Ill.2d 141.) The property of the Foundation is not used exclusively for charitable purposes.

The Foundation is neither a school nor a charitable organization. Its property is not used exclusively for charitable or benefient purposes. Hence the real estate of the Foundation is not exempt from general real-estate taxes, and the decree of the superior court of Cook County is affirmed.

*Decree affirmed.*