THE DEPARTMENT OF REVENUE, Plaintiff-Appellant, v. THOMAS J. SMITH *et al.*, Defendants-Appellees.—THOMAS J. SMITH, Plaintiff-Appellant, v. THE CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellees.

Fourth District   Nos. 4—86—0244, 4—86—0268 cons.

Opinion filed December 16, 1986.—Rehearing denied January 17, 1987.

1040

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Cynthia M. Bretthauer, Assistant Attorney General, of Chicago, of counsel), for Department of Revenue.

Wayne R. Golomb, of Springfield, for Thomas J. Smith.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

This is a consolidated appeal stemming from the Department of Revenue's (Department) decision to discharge Thomas Smith, respondent, an executive in its Compliance and Control Bureau. Respondent violated a written departmental policy requiring employees to file returns and pay taxes in a timely fashion. Respondent failed to file his 1982 and 1983 Illinois income tax returns in a timely fashion and failed to pay his 1982 Illinois taxes when due.

A hearing officer recommended that the discharge be approved by the Civil Service Commission (Commission). The Commission accepted the hearing officer's findings and conclusions, but it found respondent's actions warranted a suspension, not discharge. Both parties filed complaints for administrative review, and the circuit court affirmed the Commission's decision.

The Department appeals arguing the Commission's decision to impose a suspension should be reversed and remanded with directions for

reinstatement of the discharge. Smith appeals arguing: (1) section 3 of the Illinois Tax Delinquency Amnesty Act (Amnesty Act) (1984 Ill. Laws 3012) afforded him exemption from any administrative action by the Department; (2) the Commission lacked jurisdiction to hear the charges; (3) the Commission's decision was contrary to the manifest weight of the evidence; and (4) the Commission's decision to suspend for 90 days in addition to the suspension pending discharge was too harsh a sanction.

If we were sitting as the trier of fact, we would probably have reached a different conclusion, but we are constrained by familiar principles to give great deference to administrative findings. Therefore, we affirm. The facts will be repeated only as necessary to an understanding of the disposition.

On January 2, 1985, the Department requested approval of its discharge of respondent. The director of Central Management Services approved the written charges on January 4, 1985, and served respondent with the notice on January 14, 1985. Respondent requested a hearing. Prior to the hearing, respondent moved to dismiss the charges because they were not signed by the director of the Department of Personnel (Ill. Rev. Stat. 1985, ch. 127, par. 63b111) but instead were signed by the director of Central Management Services (CMS).

A hearing on the charges began on May 22, 1985. Respondent was called by the Department. He stated that he started working for the Department in 1971 as an accountant. He was promoted and currently was an executive V in Compliance and Control. A part of his duties are to act as a liaison between the Department and the Internal Revenue Service (IRS), manage the compliance services department, perform staff functions, and audit sales tax. Respondent stated that he had never personally audited a taxpayer and was involved in only one collection. He had a surface knowledge of tax laws but relied upon his legal staff for tax questions. He was experienced in filling out tax forms and did his own taxes.

Respondent admitted seeing and reading the employee handbooks, knowing about the State's requirement for filing, and knowing that the Department had a policy of disciplining employees who did not file and pay taxes in a timely fashion. He filed his 1982 and 1983 State tax returns in November of 1984 because he wanted to use the amnesty provisions. Previously, he could not file because filing would have influenced the property distribution in his dissolution proceeding. He was served with a summons for dissolution of marriage in July in 1982. The dissolution action was finalized in mid-March 1984. He did not file in March because he was trying to persuade his ex-wife to file a joint re-

turn. He did not attempt to file an individual return and then later amend with a joint return. He knew about this option but avoided it because he thought it would complicate matters. Respondent stated that he had enough information to file an individual return in March 1984. He filed for six-month extensions in 1982 and 1983 and received them. His counsel advised him that his failure to file had to be wilful to subject him to any penalty. He did not believe that his failure to file was wilful because of the extenuating circumstances caused by the dissolution.

Respondent talked to Richard Dunn, director of internal investigations, in April of 1983, fall of 1983, in 1984, and in 1985. Dunn asked for an explanation of the nonfiling. Respondent told Dunn about the property division problem. He sent Dunn a letter confirming his explanation. A week later, Dunn stated that no file would be opened on respondent. Respondent was upset when he found out that Dunn had opened an investigation of the matter.

On cross-examination, respondent stated that in 1982 he owed the State $24 in individual income taxes. In 1983, he received a refund. After he was served with the dissolution pleadings, his assets were frozen. At the time of the dissolution decree, the tax issues had not been resolved. The tax question and property ownership questions were the principal issues in the dissolution. The status of approximately $200,000 to $250,000 worth of assets was disputed. Filing status of the property was an indicia of ownership. Respondent admitted that filing tax status was only one indicia of ownership.

William J. Smith, director of the Compliance and Control Bureau, stated that respondent is a second-level managerial employee with the Department and under Smith's direct supervision. Respondent has six areas of responsibility. They are: (1) processing travel vouchers; (2) field receipt control; (3) managing the audit selection group; (4) managing procedures and standards; (5) being a liaison with the IRS; and (6) performing miscellaneous budget, production, and special projects. Respondent needed a good working knowledge of the tax law, regulations, and procedures to perform his duties. In Smith's bureau of the Department, there is a policy that when an employee does not file or pay State taxes in a timely fashion, disciplinary action, including termination, is taken. Respondent knew about the policy. Smith recommended respondent's discharge for several reasons. First, other employees had been discharged for late filings. Second, respondent worked in enforcement. This meant that he collected late taxes from private citizens. Third, Smith believed that there should be no question about the tax integrity of persons in the compliance division. Smith

was aware of respondent's dissolution, but unaware of the problems relating to it.

Smith talked to respondent about his tax status on December 7, 1984, the day of respondent's discharge. In the last week of October, he learned of respondent's late filing, but did not discuss it with respondent. Respondent knew about the amnesty program and conducted a training session for field employees.

On cross-examination, Smith stated that he did not notice whether respondent's late filing affected performance of his job duties. The Department had not discharged each employee who failed to file in a timely fashion. Smith admitted that some employees had been reinstated in his department and that one named employee had been reinstated.

Six months is the maximum automatic extension granted. Therefore, respondent's 1982 tax returns were filed 13 months late and his 1983 returns were filed 1 month late.

Dunn testified that he investigates all nonfiling by employees. In July 1984, Dunn became aware of respondent's tax filing history. Respondent explained why he had not filed and sent a letter stating his reasons. Dunn talked to respondent again in October and asked him why he had not yet filed. Respondent said he was preparing to file his returns. Dunn asked respondent if he were going to use the amnesty program, and respondent stated that he might as well. On November 21, 1984, Dunn personally collected respondent's 1982 and 1983 returns.

In December 1984, Dunn talked to respondent about the late filings again. Inspector Jack Silverman was present. Respondent again stated that he was aware of his responsibility to file his returns and explained that he had not filed in reliance on advice of his counsel and because of the property issues involved in his dissolution. Dunn and Silverman asked why respondent had not filed a timely individual return, then amended it later. Respondent indicated that he was aware of this option but elected not to use it. Dunn determined respondent's failure to file in a timely fashion was wilful. He reviewed the documents the Department had on file and the information on file in the dissolution proceeding. Then he concluded that respondent had sufficient information to file in a timely fashion prior to November 1984.

Dunn further stated that Agnes Houston had not filed a timely return in 1983. She retired two days after the report was submitted. Dunn did not know why she retired. Gaylord Hall, a revenue executive, was discharged for failing to file in a timely fashion. He was reinstated.

Michael Costello testified for respondent. He represented respond-

ent's former spouse in the dissolution proceedings, which were "bitterly" contested on the issue of property division. Respondent's in-laws intervened. A critical issue was whether the bonds, stock, gold certificates, silver certificates, and other items were gifts. The tax returns were important items of evidence on the ownership question. In his opinion, the reporting status of the property would have an effect on the ownership decision. However, tax status was only one indicia of ownership. The ownership and gift issues were resolved in March 1984.

Ira Loeb, district director of the Springfield IRS office, testified that respondent was his office's contact person with the State. In October 1984, one of his employee's called Loeb's attention to the fact that respondent had not yet filed his Federal returns for 1982 and 1983. Loeb took a memo to the director of the Department, Tom Johnson. Loeb told Johnson that under the circumstances, the IRS felt that it could no longer work with respondent as a liaison person. Johnson agreed.

The parties stipulated that William Smith found out about respondent's tax filing status after the October 29 meeting between Loeb and Johnson.

Dunn testified as an adverse witness. He reports to Johnson, and although he investigates all nonfilers, he does not file reports on all of them. If Dunn can resolve the absence of the returns to his satisfaction, he closes the matter. Dunn accepted respondent's explanation in July 1984. However, he did not tell respondent that he would not open an investigation on the matter. On October 29, 1984, he was called to Johnson's office. Loeb was present. Dunn told Johnson that he had accepted respondent's explanation and closed the matter pending the filing of returns. Johnson told Dunn to investigate the matter further. At the time he initially closed the matter, he had not formulated an opinion on respondent's wilfulness. Johnson did not tell him what to do after he reopened the investigation.

Respondent testified in his own behalf noting that he never told anyone he lacked necessary information to file his returns. However, ownership of $400,000 to $700,000 worth of assets was at stake.

The parties tendered the evidence deposition of Kevin Hoolehan, executive deputy director of the Department. Only part of the deposition was introduced into evidence. The part dealing with respondent's job duties was not admitted into evidence. Hoolehan stated in the admissible portion that he had worked for the Department for five months. This was his first involvement in the tax field. He, Johnson, and William Smith decided to discharge respondent.

A list of past disciplinary actions for failure to file timely returns

was introduced into evidence. It shows wide-ranging penalties for violations. Respondent's work records and performance evaluations were submitted. During the time that he worked for the Department, he had not received a rating less than superior. On October 17, 1985, respondent filed a motion to dismiss the charges based upon the Amnesty Act.

The hearing officer found that the charges against respondent were proved and recommended approval of the discharge. The Commission adopted the hearing officer's findings but found, based upon past Commission precedent, the circuit court's ruling in a similar case, and the Department's action with respect to Hall, that a 90-day suspension plus the original suspension, not discharge, was warranted.

Initially, we address respondent's contention that the provisions of the Amnesty Act precluded the Department's action to enforce its policy. Section 3 of the Amnesty Act provides that upon payment on one-half of the interest due for taxes due prior to the tax period ending July 1, 1983, the Department "shall not seek to collect any other interest or penalties which may be applicable and the Department shall not seek civil or criminal prosecution for any taxpayer for the period of time for which amnesty has been granted to a taxpayer." (1984 Ill. Laws. 3013.) Respondent argues that by its plain language, the Amnesty Act precludes any civil action against him for failure to file and pay his taxes in a timely fashion. He characterizes the action against him in the instant cause as a civil matter.

■ The first sentence of section 3 of the Amnesty Act provides that amnesty shall apply to any consequences of taxes due under the laws of the State. The language that respondent relies on in the second paragraph of section 3 states that in addition to the limitation on the penalty amount, the Department "shall not seek to collect any other interests or penalties" and shall not seek "civil or criminal prosecution." The civil or criminal prosecution and penalties are those which could be assessed for violating the tax laws. Here, respondent was discharged because of a wilful violation of departmental policy, not because he violated the revenue laws. Therefore, the provisions of the Amnesty Act are not applicable and do not preclude departmental action to discharge an employee.

Even were the provisions of the Amnesty Act applicable, administrative actions are not civil or criminal in nature. (See generally *Desai v. Metropolitan Sanitary District* (1984), 125 Ill. App. 3d 1031, 1033, 466 N.E.2d 1045, 1047.) The plain language of the Amnesty Act precludes civil or criminal proceedings. The action by the Department against respondent was administrative in nature. The ordinary meaning of statutory language should control absent contrary legislative in-

tent. (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366, 487 N.E.2d 937, 942.) Therefore, the instant administrative action is not precluded by the language of the Amnesty Act.

■■■ Respondent next argues that the Commission lacked jurisdiction to hear the charges against him because the written charges were not approved by the Directors of Personnel as provided in section 11 of the Personnel Code (Ill. Rev. Stat. 1985, ch. 127, par. 63b111). The Department argues that the Department of Personnel has been abolished, its authority transferred to CMS, and section 11 should be read in light of the legislature's overall scheme. We agree.

The primary function of the courts in interpreting and construing statutes is to ascertain and give effect to the legislature's intent in enacting the statute. (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151, 485 N.E.2d 1076, 1079.) Courts should first look to the statutory language as the best indication of the intent of the legislature (109 Ill. 2d 143, 485 N.E.2d 1076) and examine the entire statute (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 341, 473 N.E.2d 1313, 1315.) Additionally, courts seek to determine the objective the statute sought to accomplish and the problems it sought to remedy. (105 Ill. 2d 336, 473 N.E.2d 1313.) When the terms of a statute are not specifically defined, they must be given their ordinary and popularly understood meaning, but be construed in light of the purpose of the legislation. *Niven v. Siqueria* (1985), 109 Ill. 2d 357, 487 N.E.2d 937.

■■ ■ An administrative agency derives its power to act solely from the statute by which it was created. (*Illinois Power Co. v. Pollution Control Board* (1985), 137 Ill. App. 3d 449, 484 N.E.2d 898.) Failure to comply with a mandatory statutory requirement renders the proceedings before the agency void. (137 Ill. App. 3d 449, 484 N.E.2d 898.) Where jurisdiction is conferred on an agency by a statute, all facts necessary to the exercise of such jurisdiction must affirmatively appear in the record. *Spray v. Civil Service Com.* (1983), 114 Ill. App. 3d 569, 449 N.E.2d 176.

In *Spray,* the court in interpreting section 11 of the Personnel Code noted that three events are required to take place in order to establish the Commission's authority to hold a hearing. They are: first, written charges must be approved by the Director of Personnel and served upon the employee; second, the employee must make a timely request for a hearing; and, third, the hearing must be held within 30 days. In the instant case, the written charges were approved by the director of Central Management Services. Section 11 of the Personnel Code states:

"Hearing—Disciplinary action. No officer or employee under jurisdiction B \*\*\* shall be removed, discharged or demoted, or be suspended \*\*\* except for cause, upon written charges approved by the Directors of Personnel, and after an opportunity to be heard in his own defense \*\*\*." (Ill. Rev. Stat. 1985, ch. 127, par. 63b111.)

Respondent argues, relying upon the plain language of the statute, that the Commission lacked jurisdiction to hear the charges.

Through the Department of Central Management Services Executive Order Implementation Act (1982 Ill. Laws 1260), the legislature reorganized various agencies within State government and created the Department of Central Management Services (CMS). (Ill. Rev. Stat. 1985, ch. 127, par. 3.) Section 3 of the Civil Administrative Code of Illinois (Administrative Code) establishes CMS. (Ill. Rev. Stat. 1985, ch. 127, par. 3.) Section 34.1 of the Administrative Code states that CMS shall assume all of the rights, powers, and duties of the Department of Personnel. Ill. Rev. Stat. 1985, ch. 127, par. 34.1.

Section 64 of the Administrative Code provides CMS has the power to administer the Personnel Code. (See Ill. Rev. Stat. 1985, ch. 127, par. 63b3.) Section 3 of the Personnel Code also states that the director of CMS shall administer the Personnel Code. (Ill. Rev. Stat. 1985, ch. 127, par. 63b103.) The Personnel Code provides that the director of CMS shall make rules and carry out all of the functions which were once carried out by the Department of Personnel.

■ Absent a contrary legislative intent, the language of a statute should be interpreted in its popularly understood sense. (*Niven v. Siqueria* (1985), 109 Ill. 2d 357, 487 N.E.2d 937.) Courts do not have the ability to legislate but must interpret the law as set forth by the legislature. (*Doran v. Department of Labor* (1983), 116 Ill. App. 3d 471, 475, 452 N.E.2d 118, 121.) However, it is also presumed that statutes concerning the same subject matter are governed by one spirit and legislative policy. Thus, courts presume the legislature intended the acts to be harmonious. Statutory sections concerning the same subject matter should be construed and considered with reference to each other so that all sections may be given a harmonious effect. *People v. Maya* (1985), 105 Ill. 2d 281, 288-89, 473 N.E.2d 1287, 1291; *Springfield Park District v. Buckley* (1986), 140 Ill. App. 3d 524, 488 N.E.2d 1071; *In re Petition of Sullivan* (1985), 134 Ill. App. 3d 455, 480 N.E.2d 1283.

■ Statutes on the same subject matter should be viewed together to determine the legislative intent and avoid injustice. (*Doran v. Department of Labor* (1983), 116 Ill. App. 3d 471, 452 N.E.2d 118.) If

necessary, the courts must construe the statute to reflect the obvious intent of the legislature even if the words of a particular section must be read as modified or altered so as to comport with the legislative intent. (*People v. Maya* (1985), 105 Ill. 2d 281, 473 N.E.2d 1287.) In the instant case, the Personnel Code and the Administrative Code reflect the legislature's intent to transfer all of the duties of the Director of Personnel to the Director of CMS. The Department of Personnel has been abolished and replaced with the Bureau of Personnel within the Department of CMS. If the statutes in the Administrative Code and Personnel Code are read together with section 11 of the Personnel Code, it is clear that the reference to approval by the now nonexistent Directors of Personnel is a technical oversight on the legislature's part. Therefore, we view the language as meaning the Director of CMS. The Commission had jurisdiction to hear the charges against respondent.

We turn now to the substance of the matter before us. Respondent, essentially, contests the sufficiency of the evidence, arguing the Commission's decision was against the manifest weight of the evidence and the 90-day suspension in addition to a suspension pending discharge was too severe a sanction. The Department argues the Commission's decision to suspend was arbitrary, unreasonable, and unrelated to the needs of the Department.

■■ The scope of review of an administrative agency's decision regarding discharge is a two-step process. First, the court must determine if the agency's findings of fact are contrary to the manifest weight of the evidence. The findings and conclusions of an administrative agency on questions of fact are held to be *prima facie* true and correct. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 449 N.E.2d 115; *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.) The next step in the court's analysis is to determine if the findings of fact support the agency's conclusion that cause for discharge does or does not exist. *Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 449 N.E.2d 115; *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.

■■ The Commission's decision will be reversed only where it is arbitrary, unreasonable, or unrelated to the requirements of service. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885; *Department of Driver Services v. Secretary of State Merit Com.* (1985), 132 Ill. App. 3d 753, 762, 477 N.E.2d 1372, 1379.) As was noted in *Secretary of State v. Kunz* (1983), 116 Ill. App. 3d 736, 739, 452 N.E.2d 387, 389-90, at-

tempts by the court to "tinker with" punishments determined by the administrative agencies have met with little success because of the great deference given to the agency's determination. However, the appellate courts have the inherent authority to reverse a decision as to punishment.

■■■ An administrative agency's findings of fact are contrary to the manifest weight of the evidence only when the opposite conclusion is clearly apparent from the record. (*Madonia v. Houston* (1984), 125 Ill. App. 3d 713, 466 N.E.2d 648.) Initially, respondent argues that the hearing officer and thus, the Commission, which adopted the hearing officer's findings, considered matters contained within the Hoolehan deposition which the parties stipulated were not admissible. A reading of the record supports respondent's contention. However, respondent's job description was in evidence through three other sources. Therefore, respondent was not prejudiced by any improper consideration of evidence. See generally *Karayanakis v. State Universities Civil Service Merit Board* (1985), 130 Ill. App. 3d 891, 474 N.E.2d 938.

■■■ Respondent argues that the Department did not establish that he wilfully failed to file his returns or pay taxes in a timely fashion. Although respondent admits that he knew of his obligation to file and pay taxes and that he did not file or pay in a timely fashion, he argues that his dissolution, lack of funds, the complexity of the tax extension statutes, and reliance on counsel prevent his failure to file in a timely fashion from being wilful. Respondent contends that wilfulness must include an evil intent and should be defined in a manner similar to that used in enforcing Federal criminal tax states. The Department argues that the evidence showed a wilful failure to file and pay taxes in a timely fashion based upon its standards of wilfulness as interpreted by the courts. The instant action is an administrative one. Therefore, definitions of wilfulness developed for purposes of criminal adjudications do not apply.

In *Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 30-31, 476 N.E.2d 413, 418, the court looked at the term wilfulness in a civil action. It noted that wilful has generally been defined as involving intentional, knowing, and voluntary acts or reckless disregard for an obvious or known risk. No evil purpose is necessary. This definition is persuasive. Here, the evidence before the hearing officer showed that respondent knew of his responsibility to file, enforced the very statutes that he was violating, knew that he could file an individual return, knew about extension periods for filing, delayed in filing after his dissolution was finalized, delayed in filing after he had sufficient information to file, and chose not to file in a timely fashion for

economic reasons. He made this decision based upon his reliance upon counsel and his belief that no action would be taken by the Department to enforce its policy. It was not until after investigatory action had been initiated that respondent filed his tax returns. The evidence amply supported the Commission's decision that respondent had wilfully violated departmental policy.

The more difficult problem is presented by the Commission's decision to suspend rather than discharge respondent. As noted in *Kunz*, attempts by the court to disturb Commission decisions are met with little success. This court may not reverse the Commission's decision unless it is arbitrary, unreasonable, or unrelated to the needs of service. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.) In the instant case, the Commission offered reasons for its decision which included mitigating factors, past treatment of other employees, and evidence of selective enforcement of the policy. The record established that a high-level revenue-fraud agent from the Chicago office had violated the policy and had been suspended. The record also established that a member of the compliance and control bureau in Springfield had been discharged for a failure to follow the policy, but was subsequently reinstated. The Commission relied upon these examples of selective enforcement of the policy.

■■ An employee's work record may be considered as a mitigating factor. (*Department of Driver Services v. Secretary of State Merit Com.* (1985), 132 Ill. App. 3d 753, 477 N.E.2d 1372.) Selective or differing enforcement of the policy may also be considered as a mitigating factor. (*Fox v. Illinois Civil Service Com.* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201.) Under the particular circumstances of this cause, we cannot say that the Commission's decision was arbitrary, unreasonable, or unrelated to the needs of service. However, respondent's position was one of responsibility, and his actions could well have affected the effectiveness of the agency. This is shown particularly by his inability to deal as liaison with the IRS. Therefore, while we cannot say that the Commission's decision to suspend was improper, neither can we say that the length of the suspension was inappropriate.

For the above reasons, we affirm the circuit court.

Affirmed.

WEBBER and MORTHLAND, JJ., concur.