WESLIN PROPERTIES, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

Second District   No. 2—86—0656

Opinion filed June 30, 1987.

NASH, J., dissenting.

Sam Alschuler, of Alschuler, Putnam, McWethy, Funkey & Lewis, of Aurora, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Diane M. Curry-Grapsas, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Weslin Properties, Inc., sought a charitable exemption from taxation for 1983 and subsequent years for property it purchased in 1983. The Du Page County board of review and the Illinois Department of Revenue denied the exemption, finding that plaintiff's use of the property in 1983 was not charitable. The denial of exemption was affirmed on administrative review by the circuit court of Du Page County and this appeal followed. For the following reasons, we reverse.

In 1982, Copley Memorial Hospital (hospital), chartered in 1886 as a not-for-profit corporation, revised its corporate structure. Fox Valley

Health Services Corporation was incorporated as the parent corporation, whose purpose is to continue the hospital's mission of providing health care and related services on a nondiscriminatory basis as to race, creed, sex, national origin, or financial ability. Plaintiff was incorporated at the same time as a not-for-profit corporation to hold real estate titles for the organization and to turn over any income received, less expenses, to the parent corporation. The hospital's governing members and board of directors became the members and directors of Fox Valley Health Services, and Fox Valley Health Services became the sole voting member of the hospital, plaintiff, and the other newly organized subsidiary corporations.

In 1980, the hospital began to study ways of continuing and expanding its provision of health services. Expansion at the present hospital site is impossible due to its location in an historic preservation district in Aurora. In 1981, the hospital employed long-range planning consultants who recommended the acquisition of 30 to 50 acres in the growing Fox Valley East development in Du Page County.

In 1982, another consultant was hired to make in-depth studies of the health care needs of Fox Valley East, to recommend specific services to be provided, and to make a financial feasibility study. Several potential sites available for purchase were identified, and in February 1983, plaintiff's board of directors recommended to the board of Fox Valley Health Services the purchase of 24.309 acres of land adjacent to the Fox Valley Shopping Center.

The Fox Valley Health Services board approved the purchase on April 26, 1983, and the land was purchased on May 26, 1983, for $2,197,000. The deed limits the use of the land for 10 years to health care purposes. On May 31, 1983, development of a master site plan and schematic drawings was authorized, and, after some refinements, the plan for the first building, the Urgent Care Center, was approved in October 1983. In early 1984, a construction manager was hired. Value engineering and final design changes were completed by July 1984. The groundbreaking ceremony for the Urgent Care Center was held on August 27, 1984, with completion of the Urgent Care Center scheduled for May 1985.

Plaintiff's petition for exemption was denied by the Du Page County board of review on December 2, 1983. The basis for the denial was as follows: "This parcel is presently vacant but will be used in the future as a medical complex. Because the property is now vacant, the Board of Review does not feel this parcel qualifies for tax exemption."

The Department of Revenue affirmed the board of review, initially listing the basis for denial as (1) primary use not charitable; (2) prop-

erty not in exempt ownership; and (3) in general admissions policies for immediate care centers do not suggest a charitable use. Plaintiff requested that the Department of Revenue review its decision and on second review exemption was again denied on the basis that the primary use of the property was not charitable. Plaintiff then requested a formal hearing.

A hearing was held December 10, 1984, at which Greg Lintjer, president of Fox Valley Health Services, testified. His testimony detailed the motivation for and purpose of purchasing the land in question. He also testified, as set forth above, to the steps plaintiff had taken in the development of the property. The hearing officer found that charitable use had not begun in 1983, and plaintiff had not provided the admission and collection policies of the Urgent Care Center, and concluded that plaintiff had failed to establish the parcel was used for charitable purposes during 1983.

Plaintiff then sought administrative review of the Department of Revenue's determination in the circuit court of Du Page County. The court reviewed the record and memoranda submitted by the parties and held that the administrative decision was "not contrary to the manifest weight of the evidence."

█ We first note that no disputed testimony or documentary evidence was presented at any stage of the proceedings. Plaintiff's evidence was not challenged for truthfulness or accuracy. Because the relevant facts are uncontradicted, "[t]he issue before us is not whether the Department's decision was against the manifest weight of the evidence. When the facts upon which a decision of tax exempt status rests are undisputed, whether property is exempt is a question of law." (*Cook County Masonic Temple Association v. Department of Revenue* (1982), 104 Ill. App. 3d 658, 660, 432 N.E.2d 1240.) Thus the decision as to whether the property is entitled to exemption "depends solely upon an application of the appropriate legal standard to the undisputed facts." *Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs* (1983), 95 Ill. 2d 111, 129, 447 N.E.2d 315.

Article IX, section 6, of the 1970 Illinois Constitution allows the legislature to exempt from taxation property used exclusively for charitable purposes. (Ill. Const. 1970, art. IX, sec. 6.) Section 19.7 of the Revenue Act of 1939 allows exemptions for "[a]ll property of institutions of public charity, all property of beneficent and charitable organizations *** when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit." Ill. Rev. Stat. 1983, ch. 120, par. 500.7.

█ In deciding whether plaintiff here is entitled to a statutory

exemption, it should be remembered that "statutes granting tax exemptions must be strictly construed in favor of taxation [citation], and the party claiming an exemption has the burden of proving clearly and conclusively that the property in question falls within both the constitutional authorization and the terms of the [exempting] statute [citations]." (*Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 547, 494 N.E.2d 485.) Moreover, all facts are to be construed and all debatable questions resolved in favor of taxation. (*Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 155, 233 N.E.2d 537.) Plaintiff has the burden of proving both that the property is owned by a charitable organization and that the property is used exclusively for charitable purposes. (*Milward v. Paschen* (1959), 16 Ill. 2d 302, 310-311, 157 N.E.2d 1.) However, in ascertaining whether the use of property for an exempt purpose is exclusive, a court must not give the statute an unreasonably narrow construction. *Southern Illinois University Foundation v. Booker* (1981), 98 Ill. App. 3d 1062, 1074, 425 N.E.2d 465.

■ As noted above, the test of whether property is entitled to a charitable exemption is two-pronged. First, the property must be used exclusively for charitable purposes. "Exclusive" use has been defined as "primary" use. (*Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 157, 233 N.E.2d 537.) Second, the property must be owned by a charitable organization. The parties agree that the property is owned by a charitable organization, so we turn now to the question of whether plaintiff has met its burden of proving that the property is primarily used for charitable purposes.

■ "[E]vidence that land was acquired for an exempt purpose does not eliminate the need for proof of actual use for that purpose. Intention to use is not the equivalent of use." (*Skil Corp. v. Korzen* (1965), 32 Ill. 2d 249, 252, 204 N.E.2d 738.) Exemptions have been allowed, however, where property is in the actual process of development and adaptation for exempt use. (*Illinois Institute of Technology v. Skinner* (1971), 49 Ill. 2d 59, 273 N.E.2d 371; *People ex rel. Pearsall v. Catholic Bishop* (1924), 311 Ill. 11, 142 N.E.520; *In re Application of County Collector* (1977), 48 Ill. App. 3d 572, 362 N.E.2d 1335.) We must therefore determine whether plaintiff's activities in 1983 constituted development and adaptation for exempt use, or if plaintiff in 1983 merely intended to develop the property for such use.

Plaintiff admits that actual construction of the Urgent Care Center did not begin until 1984. Plaintiff argues, however, that the steps taken in 1983 clearly show that development and adaptation for exempt use was under way long before the ground breaking ceremony for the Ur-

gent Care Center. We agree.

Although summarized above, plaintiff's use of the property is more thoroughly set forth in the following excerpts from an exhibit introduced at the hearing before the Department of Revenue:

"February 14, 1983 - The Board of Weslin Properties Incorporated, an affiliate of Copley Memorial Hospital and a subsidiary of Fox Valley Health Services Corporation, recommended to the Board of Fox Valley Health Service Corporation the purchase of 24.309 acres of land adjacent to the Fox Valley Shopping Center from Urban Investment and Development Corporation.

April 26, 1983 - The Fox Valley Health Services Corporation Board approved the recommendation from Weslin Properties to purchase 24.309 acres of land adjacent to the Fox Valley Shopping Center from Urban Investment and Development Corporation with an option to purchase 10 additional acres. The land was purchased on May 26, 1983.

May 31, 1983 - The Fox Valley Health Services Corporation Board approved the development of a master site plan and schematic drawings by Hansen Lind Meyers for Phase I of the Fox Valley Project. Several meetings were held with the architects over the next few months reviewing and refining the master site plan.

August 29, 1983 - The AD-Hoc Planning Committee of the Board recommended to the Fox Valley Health Services Corporation that the site plan for the Fox Valley East land be approved and the architect begin the design development of initial phase of the project, that being the Urgent Care Center.

October 19, 1983 - The Weslin Properties Board of Trustees approved the design of the proposed Urgent Care Center. In early 1984 Turner Construction Company was selected to be the construction manager. Value engineering and final design changes were completed by July, 1984.

August 27, 1984 - The groundbreaking ceremony for the Urgent Care Center was held, shortly thereafter construction commenced. It is anticipated the construction will be completed in May, 1985 and the Urgent Care Center will become operational at that point."

Mr. Lintjer also testified that physical adaptation of the property had commenced in 1983 in the form of landscaping and the construction of berms. A berm is defined as "the dirt shoulder alongside a road." (American College Dictionary (1963).) Considering the extent of plaintiff's activities in 1983, we believe that development and adapta-

tion of the property for exempt use had begun in 1983.

This court will not ignore the realities of modern construction practice. Given the complexity of the architectural process of designing a site for a medical campus, and of designing the buildings to be located thereon, it seems virtually impossible to begin construction immediately upon purchase of the land. In this case, plaintiff proceeded quickly through the planning and design stages, expending large sums of money in the process. We conclude that plaintiff's activities in 1983 were clearly beyond mere intention to convert the property for an exempt use, and actually constituted development and adaptation for such use.

A different result is not required by *Illinois Institute of Technology v. Skinner* (1971), 49 Ill. 2d 59, 273 N.E.2d 371, a case on which the Department of Revenue places much emphasis. Plaintiff in that case sought exemption for a 107-acre tract, but was allowed an exemption for only 67 acres. Exemption was denied for the remaining 40 acres since there was no showing of actual use for an exempting purpose, or of development or adaptation for such use. (49 Ill. 2d 59, 65, 273 N.E.2d 371.) Although the plaintiff's stated intention was to develop the entire tract as a college campus, it did not plan to do so for another 5 to 15 years. (49 Ill. 2d 59, 65, 273 N.E.2d 371.) Furthermore, at the time the exemption was requested, the 40-acre tract was leased to a farmer for crop purposes at a normal rate for the area. (49 Ill. 2d 59, 61, 273 N.E.2d 371.) It was clear there that no adaptation or development had begun, especially while plaintiff was leasing the property for a profit. Plaintiff here did not lease the property, but instead began to carry out its intentions as soon as it purchased the property.

A closer analogy may be found in *In re Application of County Collector* (1977), 48 Ill. App. 3d 572, 362 N.E.2d 1335. There the court allowed an exemption for property acquired for construction of a highway, even though actual development did not begin for some time. The court took notice of the fact that construction of a major modern expressway, from its initial phases to completion, may require a number of years, and that it was necessary to acquire the land in advance in order to properly plan and carry out the construction. (48 Ill. App. 3d 572, 581, 362 N.E.2d 1335.) The construction of a modern medical campus is likewise complicated, and plaintiff here could not realistically be expected to begin construction immediately. Careful architectural preparation is an essential phase of construction and constitutes for this case adaptation and development for an exempting use.

■ The Department of Revenue does not now argue that the planned use of the Urgent Care Center is not charitable, although the

hearing officer based his denial of exemption in part on plaintiff's failure to introduce the admission and collection policies of the Urgent Care Center. Plaintiff did, however, introduce the relevant policies for the hospital. Mr. Lintjer also testified that those policies would apply to the Urgent Care Center as well. Although the policies do evince an intention to collect payment from those patients who can afford to pay for their treatment, the policies do make clear that free or reduced cost care is available to those patients who are financially unable to pay. A charitable organization "does not lose its charitable character, and consequent exemption from taxation, by reason of the fact that the recipients of some of its benefits who are able to pay are required to do so, where no profit is made but the amounts received are applied in furthering its charitable purpose." (*People ex rel. Cannon v. Southern Illinois Hospital Corp.* (1949), 404 Ill. 66, 69, 88 N.E.2d 20.) Plaintiff has submitted sufficient evidence of the Urgent Care Center's policies to prove that the proposed use will be charitable.

■ We conclude that the land necessary for the Urgent Care Center and necessary roads and parking facilities qualified for exemption in 1983. Plaintiff is not entitled to an exemption for the entire tract, however, because there is insufficient evidence from which we can say that plaintiff is adapting the entire tract for an exempt use. As shown by an affidavit of Mr. Lintjer, except for the Urgent Care Center, "the specific uses and the timetable for construction of the various structures are of necessity indefinite." There is evidence that other buildings in the planned complex will be rented office space which would not be entitled to exemption. The plans for the other buildings, at least as of 1983, more closely resemble the intentions of the plaintiff in *Illinois Institute of Technology v. Skinner* (1971), 49 Ill. 2d 59, 273 N.E.2d 371, and thus do not constitute adaptation for an exempting use.

We, therefore, reverse the decision of the circuit court of Du Page County and remand this matter to the Department of Revenue for calculation of the appropriate exemption.

Reversed and remanded.

INGLIS, J. concurs.

JUSTICE NASH, dissenting:
I respectfully dissent. Although the majority recognizes that tax exemption statutes are to be strictly construed in favor of taxation (*Fairview Haven v. Department of Revenue* (1987), 153 Ill. App. 3d 763, 770, 506 N.E.2d 341), it fails to properly apply the rule in the

present case. Section 19.7 of the Revenue Act of 1939, on which the taxpayer relies, exempts property used for charitable purposes only "when such property is *actually* and exclusively used for such charitable or beneficent purposes." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 120, par. 500.7.) The majority fails to consider the word "actually" in the statute when it concludes that property in the process of development for possible future charitable use qualifies for exemption under this provision. Statutes should be construed so that no term is rendered superfluous or meaningless. (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 365, 487 N.E.2d 937; *Bloese v. Board of Education* (1985), 138 Ill. App. 3d 460, 464, 485 N.E.2d 1276.) Moreover, when terms of a statute are not specifically defined, they should be given their ordinary and popularly understood meanings. (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366, 487 N.E.2d 937; *Department of Revenue v. Smith* (1986), 150 Ill. App. 3d 1039, 1047, 501 N.E.2d 1370.) The word "actually" is defined as "in act or fact *** at the present moment *** in point of fact: in truth" (Webster's New Collegiate Dictionary (1975).) It seems apparent from the use of the word "actually" in section 19.7 of the Revenue Act that vacant property not now applied to any charitable purpose does not qualify for tax exempt status. The fact that the taxpayer owner of the property presently plans to devote unspecified portions of it to charitable purposes at some time in the future should not be deemed sufficient to permit the property an exempt status now. It is the actual use of the property which governs the issue and it is undisputed that no charitable purposes have been served thereon in the tax year 1983, or subsequent years.

The cases relied upon by the majority do not alter the plain meaning of the language used in section 19.7 of the Revenue Act. *In re Application of County Collector* (1977), 48 Ill. App. 3d 572, 362 N.E.2d 1335, was decided under section 19.9 of the Revenue Act, which did not contain the word "actually." (Ill. Rev. Stat. 1967, ch. 120, par. 500.9.) Likewise, neither *Illinois Institute of Technology v. Skinner* (1971), 49 Ill. 2d 59, 273 N.E.2d 371, nor *People ex rel. Pearsall v. Catholic Bishop* (1924), 311 Ill. 11, 142 N.E.2d 520, were decided under statutory provisions which explicitly required that the property actually be used for the exempt purpose. *Skinner* concerned a tax exemption under section 19.1 of the Revenue Act (Ill. Rev. Stat. 1967, ch. 120, par. 500.1), and *Pearsall* involved an exemption provision which exempted "[a]ll property used exclusively for religious purposes, or used exclusively for school and religious purposes or for orphanages." (Ill. Rev. Stat. 1923, ch. 120, par. 2; *People ex rel. Pearsall v. Catholic Bishop* (1924), 311 Ill. 11, 15, 142 N.E.2d 520.) None of the cases relied

on by the majority addressed a situation where, as here, the statute unequivocally requires actual use for the exempt purposes. This court should follow the mandate of the legislature and require evidence that the property is actually used for charitable purposes before allowing it to be exempt from taxation.

. I also agree with the defendants' argument that *In re Application of County Collector* is factually distinguishable from the present case. In *County Collector* the court held that publicly owned land being developed for the purpose of constructing a highway was exempt from taxation. (*In re Application of County Collector* (1977), 48 Ill. App. 3d 572, 581, 362 N.E.2d 1335.) This court is considering privately held property for which the owners seek a charitable tax exemption while a planned Urgent Care Center is under construction. This court has recently found that in order for a medical facility to qualify for a tax exemption under section 19.7 of the Revenue Act the exempting use must be the facility's primary use and any nonexempting use be merely incidental. (*Highland Park Hospital v. Department of Revenue* (1987), 155 Ill. App. 3d 272.) In this case, the developers acknowledge that substantial portions of the property will be used for noncharitable purposes and, at this stage, there is no way of knowing whether the proposed medical facility will ever, in fact, be used primarily for charitable purposes.

Finally, the majority mistakenly suggests that plaintiff is qualified for a tax exemption for the entire year of 1983. Under section 27a of the Revenue Act (Ill. Rev. Stat. 1983, ch. 120, par. 508a) property which is transferred for a use which is exempt from taxation is only "exempt from taxes from the date of the right of possession, payment or deposit of the award therefor." Hence, even if plaintiff was entitled to an exemption for 1983, the amount of the exemption must also be prorated from the date of plaintiff's acquisition of the property for charitable purposes.

I would affirm the judgment of the circuit court of Du Page County which upheld the decisions of the Du Page County board of review and the Illinois Department of Revenue in denying the claimed tax exemption.